Opinion of the Court.
THE appellant had recovered against one appellee, who was a deputy sheriff and the rest, his securities, a judgment for the full amount of an execution, and thirty per cent, damages thereon, on account of the said deputy sheriff having failed to return the execu *138 tion within one month after the return day. To be relieved against the judgment, the appellees filed this bill, with injunction, which the court below perpetuated. From this decision this appeal is prayed.
Statement of the case.
The execution, which the deputy, Robert Harrison, had failed to return, was in favor of Jesse Harrison, the appellant, against Azariah Davis, a principal, and John Gray and Jeremiah Cravens, the securities, in a replevin bond for the sum of $1793 34, with interest, costs, &c. The grounds of equity are, in substance, the following:
1st. That prior executions had previously issued, and that whenever the deputy could have succeeded in making the money, he was prevented from doing so, by the orders of the said Jesse Harrison, or his agent, for staying said executions, and not suffering them to have their course.
2d. That when one of them, which was a ca. sa. was levied on the body of the defendant, Davis, he was released and the execution stayed by order of Jesse Harrison, the appellant.
3d. With respect to the execution, for the failure to return which, the judgment was obtained, it is alleged that Jesse Harrison, the appellant, directed the deputy sheriff to hold it up, with orders neither to levy nor return it; that the fact of such order being given, was known only to the complainant, Robert, and defendant, Jesse Harrison, and could not be made appear on the trial at law. Such secrecy, it is alleged, attended the remaining orders to return the former executions.
4th. That previous to the notice and motion, Jesse Harrison and the principal in the replevin bond, Davis, had made a full and final settlement, including the judgment ; that Davis was relied on, in the trial at law, to prove this fact; but after representing that he would prove it, before the trial, at the trial he proved the contrary; and that there was a combination and fraudulent collusion between Jesse Harrison and Davis, to subject the deputy and securities to the amount of the judgment. And of this matter a disclosure is prayed.
5th. That after the judgment on the notice, Jesse Harrison, admitting the right of the appellees to the original replevin bond, in equity, had given an order to issue the execution for their benefit ; but on issuing *139 the execution, the securities in the replevin bond obtained an injunction, alleging that they were released, by the frequent indulgences granted on the execution to the principal in the bond, and different agreements with him for further time and the record of said injunction is exhibited ; and therefore, it is contended, that the original replevin bond was discharged by law.
Statement of the case.
Where the defendant attempts a defence at law and fails in it for want of proof, he cannot afterwards have relief in chancery, on the ground that he can prove the matter of his defence by the answer of the plaintiff at law, and by no one else.
*139 6th. In an amended bill, it is alleged, that since the rendition of judgment and the giving of the aforesaid order for the execution, the said Jesse Harrison had settled the original replevin bond with Davis, and that the whole was discharged.
The answer denies any stay upon any of the former executions to have been given, and alleges all the returns to that effect are false, except in the case of a previous one, being a ca. sa. which he was induced to, direct to be stayed, and a fieri facias to be issued, by the artful and fraudulent representations of the deputy sheriff, who represented that Davis could not be taken, and that there was a sufficient property out of which the amount of the execution could be made. The orders to stay or to hold up the last execution, for not returning which, the judgment on notice and motion was obtained, is positively denied. It is also expressly denied, that ever the amount of the judgment was paid, except 955 dollars thereof, made by the sale of 4,200 acres of land on one of the executions, or that said replevin bond was included in the settlement before the judgment on notice against the sheriff, or that the amount was paid since.
It appears, in proof, that defence was made on the trial at law, and most of the witnesses sworn, which are sworn in this cause ; and that after judgment was rendered on the notice, a motion for a new trial was made and overruled.
1. There was an attempt, on the trial at law, to prove most of the grounds of equity relied on in the bill. We do not see how the conduct of Jesse Harrison, in staying previous executions, or releasing Davis from arrest, can avail the appellees; for such conduct did not ultimately release Davis, and against him the last execution, on which the notice is founded, must be still operative; and for a failure to return it, while it was effectual against Davis, although the securities *140 might be equitably released, the sheriff must be as liable as if the execution was valid against the whole. Besides, if this matter could avail the appellees, it ought to have constituted the defence at law and all matters triable at law, by way of defence, and known to the party at the time of trial, or which, on reasonable inquiry, could have been produced, ought not to be available in a chancery suit. We do not, therefore, see any advantage resulting from these, facts, to the appellees, unless they may have some influence in showing that the original judgment was fraudulent. which will be presently considered. The settlement of the replevin bond, on which this execution issued, was also a matter attempted on the trial at law, and is, therefore, unavailable in equity, even if it was a matter which the complainants below conceived that they could prove on the trial, but failed. If they made the attempt, and failed, they ought not afterwards to be allowed to resort to their bill of discovery, and retry the matter; and the proof is abundant, that this defence was made at law, but was not sustained. Besides, the appellees in this case have been unsuccessful in the discovery ; for the fact is denied, and the proof arising is from the same witnesses used on the trial at law.
Surprize may sometimes be a ground on which a court of chancery will award a new trial at law; but never in a case where relief might have been had by applying to the court of law, for a new trial.
2. Nor do we see how the surprise, occasioned by the testimony of Davis, can avail the appellees. Surprise is sometimes the ground of a new trial at law, and may authorise the interposition of the chancellor, after the hour for a new trial at law is past; but never ought the chancellor thus to interpose, where the party could have availed himself of it by applying for a new trial ; that is, where the surprise was known in time, as well as the means of defeating it, so that the party could have redressed himself by applying for a new trial in the court of law. If the party in this case was surprised by the testimony of Davis, he might not have been aware of any testimony to defeat it, when he made his application for a new trial; but the means he has resorted to has failed him. The defendant in chancery has denied it, and he has produced no testimony to prove it, except that of Davis himself, who is now called as a witness by his adversary, and, in a deposition of extraordinary length, has doubtless deposed to more facts than he did on the trial at law; *141 but agrees, essentially, with what he deposed at law, as far as we are able to discover what he said on the common law trial, and as far as the same facts are enquired after now, which were at that time. But, for the chancellor to interpose and re-try a case at common law, or even for a court at common law to lend too easy an ear to an application for a new trial, barely for the purpose of allowing a party, on the second investigation, to prove by the same witnesses, facts, which he might, but did not prove on the first trial, would be a practice fraught with numerous evil consequences, It is true, a party calling a witness may not be apprised of all he knows or could depose, pertinent to the issue. The witness may either improperly or ignorantly keep back, what he ought to tell, and which might possibly produce a different result; but as general rules will frequently operate hard in some particular cases, it is better for society that these cases should go unredressed, than a doctrine introduced, which would prove injurious to the great mass. The hour after defeat in a trial at law, is frequently an hour of distress, and excites to endeavors to procure relief by search for more facts. Willing witnesses, appealed to at such a moment, are strongly tempted to insinuate that they now know more than they told, or that they could so new model their old testimony, as to produce a different result. Hence, the danger of perjury is considerable. Besides, if a cunning party, by this means, would be entitled to a new trial, he would frequently keep in reserve, and not draw from his witnesses, some of the necessary facts, and protract litigation and harrass his adversary, instead of expending his whole force at once. We, therefore, conceive that the discovery of new facts, to be proved by the same witness, who knew the fact when first sworn, ought not to be sustained as a ground of relief.
Whenever the means of defeating the advantage which the opposite party has acquired, are known, during the time in which a new trial may lawfully be moved for, the remedy is complete in a court of law.
3. It is true, that the appellant did trifle with his right to execution on his replevin bond. On one occasion, he did release Davis from the ca. sa. ; and although he declares, in his original answer, that he was induced to do so by the representations of the deputy sheriff, that Davis could not be found, yet he confesses, in his answer to an amended bill, that he attested a mote executed by Davis to the sheriff, at the same moment; which note was part of the arrangement by *142 which the execution was stayed; and Davis deposes to his being present at the same time, and that the sheriff informed the appellant that he would then proceed with the execution, if the arrangement did not take place; so that it was, so far, his own arrangement. On another occasion, when 4,200 acres of land were to be sold under another execution, on a day regularly appointed, he and the principal in the replevin bond and execution, by consent, postponed the sale four days, when the estate was sold, and he became the purchaser. On another occasion, when the principal and securities in the replevin bond were present with the sheriff and himself, the sheriff enquired of him if he should execute the ca. sa. and he made no answer. When the last execution, for failing to return which the judgment was rendered, was placed in the officer’s hands, and Davis had given up three patents of 400 acres each, to be sold in satisfaction of the balance of the demand, by an arrangement between him and the debtor, a short time before the sale, and after it was advertised, the advertisements were pulled down, the endorsement on the execution, that notes would be taken, was torn off, and the sheriff directed to sell for specie; and all this, as Davis swears, for the purpose of wresting these lands, by a sale for specie, out of fie hands of a purchaser from Davis, into the bands of Jesse Harrison, with the expectation and understanding that Davis should get them, through the medium of his creditor. From these facts, it would seem, if there was a collusion between him and Davis, it was either to embarrass the officer, to make him liable, or to operate on the rights of others, to the benefit of Davis, by the execution. Still, however, the officer is unfortunate, on this ground ; for this was matter which could, and ought to have been used at law, and was capable of proof, by papers in his possession, and by the same witness, Davis, who has, by a severe and tedious course of interrogations, detailed it all. It must, therefore, be unavailing in equity, after the opportunity of a defence at law, the sheriff being conusant of all these facts. Besides, it may be asked, what is the reason he did not sell the three tracts of land, at the special sale, when directed ? And if he discovered that the creditor intended to embarrass him into danger, why did he hot heat the creditor seriously, by putting *143 the sale to the test, and if forbidden to sell, Return the execution from his hands, so soon as it expired ?
4. But there is another inference may fairly be drawn from all these acts of Jesse Harrison, when coupled with other circumstances in the causes and that is, that the balance of the judgment and replevin bond was considered as of no validity or value between him and his debtor, and that it could not be seriously enforced; and, of course, was considered of no other use, but to cover the estate of Davis and affect the rights of others. Other facts proved by Davis, strongly corroborate this conclusion. He deposes that two notes on a certain Mr. Lamb, were assigned to him by Jesse Harrison, and that these notes composed part of the consideration of the demand of Jesse Harrison against him, on which the judgment at law and replevin bond were founded; that Lamb disputed the consideration of these notes, so that they were considered irrecoverable; that Jesse Harrison agreed, even before the sale of the 4,200 acres of seminary lands was made by virtue of a prior execution, to take back these notes of Lamb, and give a credit on the execution, whenever these notes were produced; that accordingly, since this suit was brought, Jesse Harrison had given a receipt in writing acknowledging that he had received one of the notes, and engaging to give a credit for it and the other, on the replevin bond, or settle it some other way with him. He further states, that Jesse Harrison had purchased the seminary lands, with an understanding that he should have them again; and accordingly, Jesse Harrison gave an instrument of writing, binding himself to restore these lands, and they settled their accounts before judgment was had against the officer for his failure; and in that settlement, the 955 dollars, the price of the seminary lands, was included, but not the balance of the replevin bond, for which judgment was rendered against the sheriff; because he intended to off-set that by Lamb’s notes, and would have attempted an injunction, if ever the demand had been seriously pressed. It is also worthy of remark, that when Jesse Harrison is charged in the amended bill with having settled the original replevin bond with Davis, since the bill was filed, he barely denies, in general terms, that the balance was ever paid ; but says nothing of the merits of the judgment,
Where a judgement has been obtained against a sheriff for failing to return an execution, he may avoid it in equity by showing, that as between the plaintiff and defendant in the execution, it ought never to have have been collected.
or of his having received or agreed to receive Lamb's notes in discharge of it. Hence, the inference before drawn, is corroborated by proof that there was no merit in the balance of his debt ; or, if it had not lost its merits by the failure of value in Lamb’s notes, it never had any merit, and was contrived between Jesse Harrison and Davis, who was a sinking debtor, the purpose of protecting Davis’ property, or wresting it from others who had honestly purchased it; for the so friendly were the two in their arrangements, according to Davis’ tedious and reluctant history, that the execution with which the officer is charged, appears to be managed more like the execution of the debtor, than the creditor, and is always used for his exclusive benefit. We are not at liberty to believe, that this conduct of the two was a collusion, for the purpose of entrapping the sheriff ; for this is denied, both by the answer and the proof ; and, therefore, a design not more meritorious, must be the conclusion. Nor can we say that the balance of the debt is discharged by direct payment ; for this is cautiously denied, and Davis' testimony agrees with that denial. But notwithstanding it may not be literally paid, it may be discounted by Lamb’s notes, or ought never to have been collected at first.
5. Whether the officer and his securities can avail themselves of this matter, to procure relief, involves the question, whether a sheriff, who has, so acted as to lay himself liable to the amount of an execution placed in his hands to collect, can enquire into the equity of the original judgment, and be permitted to show that the money ought never to have been collected. We conceive that in many cases he may ; for although a sheriff is not bound to enquire into the merits of a judgment, yet he ought to be permitted to show that it is equitably nothing. It would seem against conscience, to permit a plaintiff to recover, from a sheriff the amount of his claim, in a case where the sheriff had not received the money, but had barely become liable, by some malfeasance in office, to pay the amount, when, in equity and conscience, the plaintiff is not entitled to receive a cent from his principal. Cases where the sheriff has collected the amount of an execution and fails to pay it over, may be subject to a different rule ; but where the sheriff is made liable as a penalty, it would be iniqui *145 tous to allow a plaintiff to recover from him, that to which he never was entitled.
If this ground of equity is good, it is purely equitable, and such as could not have been matter of defence at law. The court of law would not enquire into the merits of the judgment; and, of course, the failure to make the defence at law, presents no bar to relief.
But a difficulty of some importance lies in the way of the sheriff and his securities, in allowing them this as a ground of relief. They have not, in their bill, attacked the merits of the original judgment, by express allegations. They seem not to question its validity or its merits, though they have labored to show that the appellant has acted so mysteriously as not to merit the money. If they had questioned the merits of the judgment so as to put the appellant upon his guard on that point; and afforded him thereby an opportunity to support it, their case would be a better one. It may be said, in their favor, that they were ignorant in this matter, and that the acts of the parties had not suggested to them the real case. Still, however, when the discovery came out, they might have amended their pleadings and put the matter in issue. If they had done so, we could not have refused relief; but as they have failed to do it, we cannot, on this ground, per se, afford relief.
On the ground of the judgment being discharged, their case presents somewhat a different aspect. They allege it is paid. This is denied. They allege it is settled in some way, and pray a disclosure of this settlement. They are answered, it is not paid. It turns out, however, that the plaintiff in the execution had agreed to discharge it by taking back Lamb’s notes. In this situation it remains undisturbed, except so far as it was used for the debtor’s benefit, until after the judgment, was had for it against the sheriff. Then, in pursuance of the previous promise, he takes in one of Lamb’s notes, and agrees in writing to discount both. This proof, in a case where the complainants must have been ignorant of the real state of the fact, we conceive, is admissible in support of the allegation that the demand was paid and settled, although the appellant has quieted his conscience by saying, in answer to this allegation, that it was not paid, omitting to state feat it was settled by Lamb’s notes. Such proof suf *146 ficiently comports with the bill, to sustain the relief granted by the court below. The equity is rendered more strong , by the circumstance, that after the obtention of the judgment against the sheriff and his securities, the appellant by order, gave up the benefit of his judgment to them, when he had previously and secretly agreed to settle it by Lamb's notes ; and since so surrendering it, he has proceeded to complete his contract by writing, engaging the discount and acknowledging the receipt of one of them. We will not here stop long to enquire and decide, as the appellant his answer requires us, whether he was equitably bound to give them the benefit of this judgment. Whether a sheriff, thus made liable, could coerce such assignment, is a different question from what we have now to consider. Whether the appellant was bound , or not to surreder it, it did belong in equity to the sheriff; and as he did do it, after he had the appelles bound to him by judgment for the same money, they could equitably keep it, and were entitled to it. And as the appellant had taken it from them for the purpose of executing and fulfilling his previous engagement, secretly made, with Davis, it was a fraud on them, for which he deserves to lose his judgment against them ; especially, when he had virtually settled the matter with Davis, before he obtained the judgment. We conceive, therefore, that the court below did right in leaving him to fulfil his engagements with Davis, with the judgment and for that cause laying asleep his ill-gotten judgment against the appellees.
The decree must, therefore, be affirmed with costs.