Opinion op the Court, §y
Ch. J. BcSyle.
Rogers obtained a judgment against Mason, in the circuit court for Montgomery county, where the latter resided'and bad a large real and personal estate, and Trad neither removed himself nor his effects out of, the, county, but Rogers caused an execution of fieri fadas tó be issued upon the judgment, directed to the sheriff o^Fayette county, who, in virtue of the .execution, took a" slave belonging to Mason, which happened to he there; and the only question worthy of notice, is, whe-flier the execution so issued was authorised by law, or ri'ot.' •
In the former opinion delivered in this case, we decided that the emanation of the execution to Fayette coun-. ty, was'authorised by an act of Virginia of 1772; but,. having entertained serious doubts whether we had not rtyiscónsfrued that 'act, we were induced to grant a re-Ifearing, and it now becomes our indispensable duty to rS-examine the subject.
The jurisdiction of our circuitcourts, though gener-ai with respect to the persons an’d subjects within their respective circuits, is circumscribed by their territorial limite^ ai)d it is plain, that process cannot be issued them beyond tbos(e limits, except in cases expressly au-thoriséd by law. That there is any act of the legisla-túre'of this state, which authorised the emanation of the execution in this case to Fayette county, is not tended; but the, county courts of Virginia were, our circuit courts, of a limited territorial jurisdiction, aM Jpe laws which governed those courts ad’ÓDtéd by this state, and. made th,e, rules for the gov-ernmqgt of the quarter session courts at their. erection, a¿d^w^rg 't^nsfereqd to .l]he„qi|rcu|t. courts .on their fabljflimpnt, .tii’qre js an.obvious propriety in-resorting *376 to those laws, so far.as they have, not been altered or repealed, for the purpose of ascertaining the rules -of proceeding in our circuit courts.
Rules for construing statutes.
Theintcntion of the legislature must be b^o'ther'cVi-denco besides the words of t.he act.
The want of power in the county courts of yirginia, to send their process beyond their territorial limits, must, no doubt, have often resulted in a failure ofjus-ffce; but there does not appear to have been any at* tempt to remedy this defect, untiUhe passage of. the act 0p x748. By the 20th section of that act it is pro-vicled, “ that where judgment shall be obtained in any county court, for any debt or damages, and the person against whom such judgment shall he obtained,-shall remove himself and his effects, or shall reside out of the limits of the jurisdiction of such, court, it shall be lawful for the clerk of the court where judgment was given, at the request of the party for whom the same was rendered, to issue any writ o ifieri facias or capias ad satisfacien-dum, and direct the same to the sheriff of any county where the defendant or his goods shall be found..”. Body of Laws, 196.
This act manifestly authorised only writs offufa, and ecu sa. upon judgments for debtor damages, to be sent from one’county to another, where the defendant re* moved himself and effects, or resided out of the county where the judgment was obtained; and, of course, there were other writs of execution which might, with propriety, be issued upon judgments, decrees in chancery and final orders, within the county, but which could not be sent beyond its limits; and for want of the power to send these out of the territorial jurisdiction of the courts, there might still be a failure, in some cases, to attain the ends of’justice. It became necessary, therefore, that further provision for these cases should he made, and this was done by the act of 1772, which, together with its preamble, is as follows:
“ Whereas the laws concerning executions, are de* ■ fective, in not authorising the clerks of county courts to issue ail manner of legal and proper writs of execution, upon judgments, decrees in chancery and final orders, duly recovered and obtained in such county, into other counties, as is done in writs of capias ad satisfacienduyn or fieri facias: Be it therefore enacted, that the clerks of the several county courts in this colony, shall be, and they are hereby empowered and required, upon the application of any party who hath obtained or shall obtain *377 •any judgment, decree or final order, in such courts, to issue any legal or proper writ or attachment thereupon, as the case’may require; as also, to issue attachments against executors, administrators or guardians, who shall fail to account, when ordered so to do by such court, directed to any sheriff of the same or any other county, provided there be fifteen days at the least, and not more than ninety days, between the teste and return.”
The body of this act would, no doubt, according to the literal import of the words employed,' apply to' writs of ca. sa. an&fi.fa. as well as to all other writs of execution, and would authorise their emanation in all cases, from the county where the judgment was obtained to any other county, regardless of the circumstance whether the defendant had removed himself or effects, or resided out of the county where the judgment was obtained, or not. But is this the true construction of the act? The literal interpretation of an act is certainly not, in all cases, the interpretation which either reason or law requires to be given to it; for it is not the words of an act, but the will of the legislature, which constitutes the law, and although words are the most common, they are not the only signs of the legislative will. The context, the subject-matter, the effects and consequences, and the reason and spirit of the law, are often all called in to aid in ascertaining the intention of the legislature. No language is, indeed, so perfect, as to afford words to express every idea, upon all subjects, with perspicuity and precision; and even when words are not wanting, those, that are most-happily adapted to the purpose in view, do not always occur to the mind of the legislature. Hence it is, that words are employed which sometimes go beyond the legislative will, and sometimes fall short of it; which sometimes are too general and comprehensive, and sometimes too particular and restricted; and it is, therefore, an-established rule ■of construction, applicable to all remedial statutes, that cases within the reason, though not within the letter of a statute, shall be embraced by its provisions, and Cases not within the reason, though within the letter, shall pot be taken to be within the statute. In Stradling vs. Morgan, 1 Plow. 200, and Eyston vs. Studd, 2 Plow. 463, the general rule is laid down and supported' by arguments of the most conclusive character. In the former *378 case, page 206, after illustrating the latter branch of the ru^e by numerous examples, it is added in conclusion, “from which cases it appears that the sages of (he law .heretofore have construed statutes quite contrary to the letter in some appearance, and those,statutes which comprehend all things in the letter, they have expounded to extend but to some things, and those which generally prohibit all persons from doing such an act, they have interpreted to permit some people to do it, and those which .include every person in the letter, they have adjudged to reach some persons only5 which expositions have always been founded upon the intent of the legislature, which they have collected sometimes by considering the cause and necessity of making the. act, sometimes by comparing one part ofthe act with another, and sometimes by foreign circumstances.”
It must be admitted, that to resort to foreign or extrinsic circdmstances to ascertain the reason of a statute, and thereby to limit the literal import of its words, ■requires the utmost caution and discretion; but, happily, the necessity of resorting to extrinsic circumstances •for that purpose, in regard to the act of 1772, does not exist; for we have only to look beyond the body of the act, to its preamble, to see at once the reason of the passage of the act, and the limits within which the itñ-port.of the general terms employed, should be confined. It is yery obvious, that theca, sa. and fi.fa. would be liable 'to great abuse, if they were permitted, to be issued to any county in the state, at the pleasure of the party; and the legislature, aware of this, at the same time that they saw, and intended to remedy the defect of justice, which must, no doubt, have resulted from not permitting those writs of execution to be sent from the county in any case, by the act of-1748, gave authority to do so, only in the cases where the defendant had removed himself and effects, or resided out of the county where the judgment was obtained. Now, it is apparent from the preamble of the act of 1772, that the legislature did not consider the laws concerning executions defective,because theydid not authorise the emanation of writs of ca. sm.and fi. fa. to any county in the state, ad libitum; on the contrary, the preamble states the laws to be defective only, “ in not authorising the clerks ofthe county courts to issue all manner of legal and proper' writs *379 hfi execution- upon judgments, decrees, &c. into other counties, as is done in writs of capias ad satisfaciendum or fieri facias.’’’’ Thus plainly indicating the rcasqn for passing the act, and the extent to -which it was intended to go; for the expressions used'with reference to writs of ca’. sa. and Jii fa. show clearly that the legislature was satisfied with-what they had already done with respect to. those writs,, and'that they only intended to-place other writs of execution upon the same footing.. If, then, according to the general rule already mentioned,. of construing remedial' statutes, cases not within the reason, though within the letter of a statute, cannot be considered as embraced'by its provisions, it is evident that the act of 1772 ought not to be construed to-authorise the emanation of writs of ca. sa. and filfa, to any county in the state, at the pleasure of the party,. and it follows, that those writs, since, as well as before the passage of the act of 1772, can be sent out of the-county, according to the provisions of the act of 1748,-, only where the defendant removes himself or effects, or resides out of the county.
This is in fact the construction given to the act of' 1772 by the court of appeals of Virginia, as is apparent from t-he-case of Brydie vs. Langham, 2 Wash. Rep. 72; for in that case the writs of ca. sa. which had issued up-, on judgments recovered in the county court of Flu vana, directed' to the sheriff of Henrico county,-where the defendant was taken and-committed to jail, were quashed’ by the inferior court, because-the defendant was a rési-dent of Fluvana, and had not removed his effects out of that county, and on an appeal, the judgment was affirmed by the court of appeals. The act of 1772 is not, in-deed, mentioned in the report- of that case, and the question appears to have turned; exclusively on the construction of the act of 1748; but that'very circum- - stance proves that it was considered- a settled* point,.' that the act of 1772 did not authorise the emanation of the' writs of ca. sa. to the county of Henrico;' for,-.other- ■ wise, the- decision quashing- those writs would have; been erroneous, and the acknowledged learning andi abilities of the court, as well as of the counsel concern-.ed, must repel every suspicion that the act-of 1772, if it had applied to the- case, would- have- escaped their attention. This accords, too, with what is believed to have been, until recently, the generally, if not the u-m*- *380 versally received opinion with respect to the act of 1772. In the casé of Scott vs. Maupin, Hard. Rep. 122,. this court itself seems to have entertained that opinion:;for they assume the position, that- the plaintiff is permitted, only in some cases, to send an execution out of the county, and' (he position would not be correct, if the act of 1772 authorised executions to be sent out of the county in all cases. That case, it is true,, is not in point, and the court only assumed the position arguendo but the assumption of it in that way is sufficient to show that it accorded with the settled opinion of the court.
1 Litt. 137.
1 Dig. 484,
As a further proof that it was the generally received construction of the act of 1772, that it did not authorise writs of ca. sa. and fi. fa. to be sent from the county in all cases, we may refer to the repealed acts of the legislature of this state upon the subject. By an act of 1792, entitled “an act concerning executions and for the relief of insolvent debtors,” the legislature re-enacted, in substance, the same provision as is contained in, the act of 1748; and again, in an act o*f 1796, entitled “ an act to reduce into one the several acts and parts of acts concerning executions, and for the relief of insolvent debtors,” they have included the same provision,, but extended it to all other writs of execution, as well as to writs of ca. sa. and fi. fa. These acts, we think, clearly indicate the opinion of the'legislalure, that the act of 1772 did not authorise writs of ca. sa. and fi. fa. to be sent out of the county in all cases; for, otherwise! we cannot suppose that they would have passed over the act of 1772, and have gone back almost the half of a century, to the act of 1748, and revived and re-enacted its provisions, which only authorise those writs to be sent out of the county in particular cases. To suppose that they had done so, would be not only supposing that their acts were idle and useless, but would, in effect, be ascribing to them the most glaring inconsistency, in authorising, by their acts, executions to be sent out of the county in particular cases only, when at the same time they knew that by the act of 1772. executions might be sent out of the county in all cases.. Such absurdity and inconsistency we cannot decently impute to the legislature, and we must therefore take their acts to amount to a virtual recognition of the construction which we haye here given to the act tíf 1772.
*381 l¥e are constrained, therefore, to say, (Jodge. Mills dissenting,) that the construction- which we gave, in the former opinion, to that act, was incorrect, and that the act did not authorise the emanation of the-execution in this case to Fayette county.
The court below, therefore, erred in not quashing the execution; and, consequently, the judgment of that court must be reversed with costs, and the cause be remanded to that court, that a judgment quashing the execution may be there, entered.