## KNAPP v. McBRIDE & NORMAN.

1. *Semble*—Where the defendant denies by plea, regularly pleaded, that he made the note on which the action is founded, the plaintiff may read the note to the jury, if he show *prima facie* that it was made by the defendant, or that he au-thorized it, or adopted it as his own; but in the inquiry before the Court, the ex-amination should not be extended so far as to show, that in point of law, there is no obligation upon the defendant. When the note has been read to the jury upon the plaintiffs proof, then the defendant may adduce his evidence.

2. So where a note purports to have been made by an attorney, the written pow-er, if unexceptionable in point of law, and shown by the plaintiff to be *prima facie* genuine, should be allowed to go to the jury, in an action upon the note.

3. D. & K. appointed H. D. their attorney, " with full power and authority for us, and in our name, to draw or indorse promissory notes, to accept, draw or indorse bills of exchange, and to sign any check, or checks, order or orders, for any money or effects, which we now have, or hereafter may have, deposited in the Branch of the Bank," &c.: *Held*—that H. D. had an authority to make, draw, or indorse notes or bills, on account of D. & K., without reference to the form

and amount, or place where, and to whom payable. As to checks and orders there is a limitation—these must be addressed to the Branch of the Bank, &c.

4. One partner may bind the firm by contracts relating to the partnership, and when a note made by one partner in the name of the firm is put in suit, it is not incumbent on the plaintiff in the first instance to show that the note was given for a partnership transaction, for such is the legal intendment. If the note was given for the individual debt of the partner making it, with the knowledge of the party to whom it was given, these facts must be shown in defence to the action.

5. *Semble*—Where a promissory note is made negotiable and payable at Bank, the right of set off or other kindred defence is waived, not only against the Bank, but against any one who may advance upon it, without notice of the unfairness of its origin.

6. The death of one of several partners, operates a dissolution of the partnership, unless its continuance is provided for by express stipulation. But, *quere*—where one partner gives a power of attorney in the firm name with authority to make notes, draw bills, &c., and after his death, the attorney without a knowledge thereof, makes a negotiable note in the name of the partnership, antedated of a day when the deceased partner was in life, which goes into the hands of a *bona fide* holder, without notice, may it not be enforced against the surviving partner, although it was given in payment of the deceased partner's debt?

7. Where the Court charged the jury, that a power of attorney, before them, conferred the authority to execute the note on which the suit was brought, unless the same was revoked, which they were to ascertain from the evidence before them, the charge is not objectionable, as referring to the jury the decision of the legal question, viz: what amounts to a revocation?

8. A party excepting to the ruling of the Court against him must show affirmatively the existence of error, and an appellate Court cannot aid him by presuming what the record does not discover.

9. The *neglect* or *omission* of the judge to instruct the jury on some material point, though it might sometimes furnish just grounds for a new trial, will not warrant a reversal of the judgment.

Writ of error to the County Court of Mobile.*

THIS was an action of Assumpsit, at the suit of the defendant in error, against the plaintiffs, on a promissory note, dated Mobile, 11th June, 1836, and subscribed thus, "Dunning & Knapp, per H. Dunning," by which they promised six months

---

* This case was determined in June, 1838, and should have been reported in 7th or 8th Porter, and though the opinion was written by myself, I had entirely forgotten it, until the copy of a certified copy of the original was handed me two days ago by the Clerk of the Supreme Court, with the remark that he had just obtained it in Mobile, and that the case was not reported. Neither the Clerk or late Reporter recollect any thing of the original; it is not found in the office of the former, though from having certified the copy, which he has been permitted to transcribe, he knows it was once there. The case is of such a character as deserves a place in our Reports, and we avail ourselves of the earliest opportunity to make it public. —COLLIER, C. J.

after date, " to pay Wm. D. Primrose, or order, five thousand dollars, for value received, negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile." On this note were the indorsements of ·the payee and Messrs. Rivers & Hopkins.

The defendant pleaded—1. Non-assumpsit.  2. That neither himself, nor Dunning & Knapp, made, signed or executed the note declared on, in manner and form as the same is set forth in the declaration.  This latter plea the defendant verified by affidavit.  3. The third plea is the same as the second, save only it adds, the note was not made, signed and executed by any person authorized by Dunning & Knapp, and they have not " duly and legally ratified the signing and execution thereof, as their act and deed."  4. That the defendant did not make, sign or execute the note, nor was it made, signed or executed by any person authorized by him individually, or as a member of the firm of Dunning & Knapp, or otherwise, neither hath he duly and legally ratified the signing and execution thereof· subsequently as his act and deed.  5. That the note was not made, signed or executed by the defendant or any one authorized to bind him individually, or as a member of the firm of Dunning & Knapp, or otherwise.  This latter plea was verified by the defendant's affidavit.  The cause being submitted to a jury, a verdict was returned for the plaintiff, and judgment rendered accordingly.

On the trial the defendant excepted to the ruling of the Court.  From the bill of exceptions, it appears, that to prove the execution of the note, the plaintiff introduced a witness, who testified, that he believed the signature of H. Dunning to the note was genuine, but stated that he had never seen him write, and only judged of his signature from checks drawn by him on the Branch Bank, and which the witness, as one of the paying tellers, had paid.  Plaintiff then offered a power of attorney, which the same witness produced in Court, of the following tenor:

" Know all men by these presents, that we, Dunning & Knapp, of the City of Mobile, have nominated, constituted, and appointed, and by these presents, do nominate, constitute, and appoint Henry Dunning, of the same place, our true and lawful attorney, with full power and authority, for us, and in

our name, to draw or indorse promissory notes, to accept,
draw or indorse bills of exchange, and to sign any check or
checks, order or orders, for any money or effects, which we
now have, or hereafter may have, deposited in the Branch of
the Bank of the State of Alabama at Mobile; with power,
also, as attorney or attorneys for the purposes aforesaid, to
make and substitute. And we do hereby declare it to be our
meaning and intention, and the true intent and meaning of
these presents, that the power and authority hereby given to
our said attorney, shall and may continue to be exercised by
him, or his substitute, until the same shall be revoked by us
in writing, and notice thereof to the Cashier, for the time being,
of said Branch of the Bank of the State of Alabama at Mobile,
given. And in case any act or acts, thing or things, which our
said attorney, or his substitutes, are hereby authorized or em-
powered to do for us, shall be done by him, or them, after our
death, but before notice of our death shall have been given
to the Cashier for the Branch of the Bank of the State of Ala-
bama at Mobile, the same shall be to all intents and purposes
as valid, binding and effectual in the law, against our heirs, ex-
ecutors and administrators, as if the same act had been done by
our said attorney, or his substitutes, in his life time, or by us
in person: Hereby ratifying and confirming all that our said
attorney or his substitutes shall lawfully do by virtue thereof.
In testimony whereof, we have hereunto set our hands, the
twenty-eighth day of May, in the year of our Lord, one thou-
sand, eight hundred and thirty-five.
(Signed,)           DUNNING & KNAPP.''
This power of attorney is subscribed by E. C. Southworth,
as a witness to the signature of Dunning & Knapp, and at the
foot thereof, there is a certificate of a notary public of Mobile,
under his notarial seal, dated the 29th of May, 1835, in which
he certifies, that Dunning & Knapp, by Edward Dunning, ap-
peared before him, " who acknowledged that he signed and
sealed the foregoing power of attorney, on the day and year
therein mentioned, to the said Henry Dunning, for the uses
and purposes therein mentioned."
The witness first adduced, testified that the power, of which
a copy is set out above, had been lodged in the Bank, in pur-
suance of a rule or custom of the institution, in all cases where

Knapp v. McBride & Norman.

persons intended others to deal for them as agents, with the Bank, by Edward Dunning : *Further*—the power had been verbally revoked in Bank, by either Edward Dunning, or his partner, Knapp, on the 28th of June, 1836, and an entry of that revocation made on the same day, by the proper officer, in a book kept for that purpose ; and that after that day it had not been regarded by the Bank as a subsisting power.

Henry Dunning was then called by the plaintiff, to give evidence *to the Court ;* being sworn, he stated that he had executed the note in question, as the agent of Dunning & Knapp, supposing at the time, he was authorized to do so; that he had in one of the desks of Dunning & Knapp a power of attorney, (which however, was not produced, nor any effort made to produce it.) That he had never seen the power set out above until then, and only heard of its existence from Edward Dunning.  Witness further proved that Edward Dunning and defendant composed the firm of Dunning & Knapp ; that they kept a jeweler's store in Mobile, where the note bears date, and up to the death of Dunning, which occurred about the 4th of October, 1836.  The note in question was antedated about four months, was made some time before Dunning's death, though at the time of making it, his death was not known in Mobile.  *Further*—the note was executed in order to raise money to take up a note which had been executed in the name of Dunning & Knapp, to certain vendors of real estate, and which had been purchased by Edward Dunning and one Wm. D. Primrose, for their own account.  The defendant had no interest in the real estate, and was absent from the State when the same was purchased, and had been for a long time before, and so continued until the note was made, and had no "information or interest respecting the execution of the note above copied, and which was executed to raise money to pay off the note given for real estate as aforesaid."

E. C. Southworth, on the part of the plaintiff, stated that he signed the said power of attorney as an attesting witness, and that the same was executed in his presence by either Edward Dunning or the defendant, but he believed it was by the former.  *" Upon this testimony so offered to the Court as aforesaid,* the plaintiff offered to read to the jury as evidence

the power of attorney herein above copied as aforesaid, and which was deposited in the said Bank as aforesaid: also, to read in evidence to the jury the promissory note first above mentioned, and herein copied as aforesaid, without further proof. To which the defendant objected, but the objection was overruled, and the said power of attorney and note herein above last specified, were accordingly allowed to be read to the jury as evidence in the cause. And the Court charged the jury that although the said promissory note had not been sold to the said Branch Bank, and had not been discounted by, or at any time belonged to the Bank, yet the said power was sufficient evidence of authority in H. Dunning, to make .the said note, unless it had been revoked, (a fact for the jury to ascertain from the evidence before them,) before the said note was executed." To all which the defendant by his counsel excepted, &c.

The errors are—" First, in admitting the evidence stated in the bill of exceptions. Second, in giving the charge as stated in the said bill of exceptions."

GAYLE & VANDEGRAAFF, for the plaintiff in error.*
J. A. CAMPBELL, for the defendants.

COLLIER, C. J.—We have considered this case very attentively and are satisfied, that several of the points made at the argument are not presented by the record. The questions assigned for error, arise upon the bill of exceptions, and are 1st. Was the power of attorney and the note on which the action is founded properly received in evidence? 2d. Is the charge of the Judge to the jury erroneous, *as stated in the bill of exceptions?*

1. Where a defendant by plea, regularly pleaded, denies that he made a promissory note the foundation of an action, it is incumbent on the plaintiff before he can read the note to the jury, to show *prima facie* that it was made by the defendant,

---

* We have not been able to find a brief or note of the argument, but infer from the opinion, that other points than those raised upon the bill of exceptions were made at the bar. The latitude taken by counsel will readily furnish the reason why the Court has even noticed points not legitimately presented by the bill of exceptions. This is frequently done in all appellate Courts in deference to the bar. The names of the counsel who appeared in the Supreme Court, it is supposed are correctly stated, as they are taken from the assignment and joinder in error.

Knapp v. McBride & Norman.

or that he authorized it, or adopted it as his own.    When the
plaintiff does this, he throws upon the defendant the burthen
of making good his defence.*    In the preliminary inquiry be-
fore the Court, it would be irregular to extend the examina-
tion so far as to show that *in point of law*, there is no obliga-
tion upon the defendant, if the plaintiff has first proved that
*in fact* the note was made by him or one having authority
from him; after the paper has been read to the jury, upon proof
making out a *prima facie* case for the plaintiff, then the de-
fendant's proof is to be heard—the plea addresses itself to the ju-
ry, and it would not of course be permissible to contest the facts
before the Court.    In the case before us it was proved that the
deceased partner, made a power of attorney subscribed in the
name and style of the firm, with the usual attestation and seal,
and deposited it in the Branch of the Bank of the State of Ala-
bama at Mobile, by which H. Dunning was authorized to
draw or indorse promissory notes, &c. for and in the name of
Dunning & Knapp.

It was then shown that the attorney named in the power
made the note in question.    In Lucas v. The Bank of Darien, [2
Stewart, R. 320.] it was decided that " The right of one part-
ner to appoint an agent to conduct the business of the concern
results unquestionably from the genuine authority of part-
ners," and that the use of a seal by one partner in giving an
authority to make promissory notes in the name of the firm,
did not invalidate a note made by the agent—that the seal af-
fixed to the power, did not in any degree enhance the dignity
of the note as a security for money, but should be treated as
an unessential part of the power.    Taking the letter of attor-
ney to have been unexceptionable *in point of law*, and the
note to have been made by the attorney it designates, we can
conceive of no objection to the admission of the note and pow-
er in evidence to the jury.

2. It was not essential to the validity of the note, that it
should have been negotiated at the Branch Bank in order to
have made it binding on the plaintiff.    The power does not

* The conclusion upon this point conforms to what seemed to be the practice in
this State at the time the case was decided, and previously, but according to later
decisions, the note is admissible without first making out a *prima facie* case, by
parol proof to the Court, and the evidence is adduced to the jury to show its gen-
uineness, or that it imposes a legal duty.

restrict the attorney to the making of notes to be sold or discounted there. It invests Henry Dunning "with full power and authority for us (Dunning & Knapp) and in our names to draw or indorse promissory notes, to accept, draw, or indorse bills of exchange, and to sign any check or checks, order or orders, for any money or effects which we now have, or hereafter may have, deposited in the Branch of the Bank of the State of Alabama at Mobile," &c. Here is a clear authority to make or indorse *notes* or *bills* on account of the firm, without any direction as to form and amount, or place where, and to whom payable. The limitation extends only to checks or orders—these must be addressed to the Branch Bank. So that if Dunning & Knapp had money or other valuables deposited in any other Bank, or elsewhere, they could not have been withdrawn by their attorney.

It may be laid down generally, that one partner has the right to bind the firm by contracts relating to the partnership. [Collyer on Part. 212.] And if one partner give a promissory note in the name of the firm, it would according to the law merchant be binding on the firm *jointly* in the hands of any *bona fide holder*. [Collyer on Part. 219,] So in Church vs. Sparrow, [5 Wend. R. 223] it was decided that where a general partnership exists, and money is borrowed by one of the firm in the name of the concern, all parties are liable, although the money obtained be appropriated by the partner borrowing it to his own use. And notwithstanding our statute of 1812, in regard to the assignability of bonds, &c., it is clear, that if there is no fraud in the concoction of a promissory note, on the part of the party *in whose favor* it is made, (or his agent,) it would be a valid security against the partnership. [Collyer on Part. 240, et. post.; Aik. Dig. § 6, page 328.]

If one partner give a security in the name of the firm for a debt, known to the person taking the security to be his individual debt, if done without the consent of his copartners it is not binding upon them. [Livingston vs. Hastie, 2 Caine's R. 246; Livingston vs. Roosevelt, 4 Johns. R. 262; n. Lansing vs. Gaird, 2 Johns. R. 300; Hagas, et. al. vs. Mounts, 3 Blackf. R. 57; Taylor, et. al. vs. Hillyer, 3 Blackf. R. 433.] Nor can one partner bind his copartner without his assent by

subscribing or indorsing a promissory note with the partnership name as security for the debt of a third person with the knowledge of the creditor.   [Rolston vs. Click, et. al. 1 Stewart R. 526 ; Laverty v. Burr, 1 Wend. R. 529.]

And where a note made by one partner in the name of the firm is put in suit, it is not incumbent on the plaintiff in the first instance to show that the note was given for a partnership transaction.   It will be intended to have been made in the course of partnership dealings ; and if it was given for the individual debt of the partner making it, with the knowledge of the party to whom it was given, these facts must be shown in the defence by the party taking advantage of them.   [Doty vs. Bates, 11 Johns. R. 544; Vallett vs. Parker, 6 Wend, R. 615.]

The principles we have stated in regard to the power of individual partners are either essential to the credit of the firm or to commercial prosperity, or else result from the settled rule, that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must himself sustain it. [Collyer on Part. 241; 2 T. R. 70; 6 Wend. R. 620.]

From the record it appears, " that the said note was executed in order to raise money to take up a note which had been executed in the name of Dunning & Knapp to certain vendors of certain real estate, and which said real estate had been purchased by Edward Dunning and one William D. Primrose for their own account."   William D. Primrose is made the payee of the note, and if he be the same who was concerned with Edward Dunning in the purchase of real estate he must have been aware that the consideration of the note did not go to the account and benefit of the plaintiff.   Yet conceding all this, and the plaintiff in error cannot insist upon a fraud on his rights as against the defendants.   The note is " negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile," and to some extent is governed by the rules of the law merchant.   [Aik. Dig. § 11, page 329.]   Apart however from this consideration, the note is *prima facie* binding on its apparent makers, and by being expressly made *negotiable and payable at the Branch Bank*, the right of set off or other kindred defence must be taken to have been waived, not only

as against the Bank, but against any one who might advance on the note without a knowledge of the unfairness of its origin. [Mandeville vs. Union Bank of Georgetown; 9 Cranch's R. 11, &c.]

To defeat a recovery on the ground that the proceeds of the note were applied to the benefit of Edward Dunning *alone*, and not to Dunning & Knapp, the plaintiff should have traced a knowledge of that fact to the defendants. So far from this having been done, the record does not discover even an effort to fix upon the defendants any participation in the fraud practised upon the plaintiff.

There can be no doubt but that the death of either party, however numerous the association, operates a dissolution of the partnership, unless such an event is provided for by an express stipulation to the contrary. [3 Kent's Com. 39; Collyer on Part., 60, 62, 113; Gow. on Part. 240; Cranshaw vs. Collins, 15 Ves. R. 228; Gillespie vs. Hamilton, 3 Madd. 251.] So the death of a party *in general* revokes all authorities given by him, whether expressed or implied. Yet in Usher & another vs. Dauncey & another, (4 Camp. R. 97,) it appeared that a member of a partnership, consisting of several individuals, drew a bill of exchange in blank in the partnership name, and delivered it to a clerk to be filled up for the use of the partnership as the exigencies of business might require, according to a course of dealing in other instances, and after the death of the partner who drew and indorsed the bill, and the surviving partners had assumed a new firm, the clerk filled up the bill, inserting a date prior to his death, and sent it into circulation ; it was held that the surviving partners were liable as drawers of the bill to a *bona fide* holder for value, although no part of the value came to their hands.

Lord Ellenborough said that the case came within the principle of Russell vs. Langstaff, (Doug. R. 513,) that the power must be considered to emanate from the partnership — not from the individual partner, and that therefore after his death, the bill might still be filled up so as to bind the survivors.

The case at bar strikingly resembles that cited from 4th Campbell—in that case the note had no legal existence until it was negotiated after the death of the partner. Its delivery to

the clerk with power to negotiate it, did not convey an authority higher or more conclusive than did the power in the present case.   In the former case, so in this, the partner giving the power had died before it was executed; in both, the notes were antedated, and a collection sought of the surviving partners who had had no direct agency in the transaction, and derived no benefit from it.   The instructions to the jury state the law as follows : " That although the said promissory note had not been sold to the said Branch Bank, and had not been discounted by, or at any time belonged to the Bank, yet the said power *was* sufficient evidence of authority in H. Dunning to make the said note unless it had been revoked, (a fact for the jury to ascertain from the evidence before them,) before the said note was executed." The Judge did not refer to the jury the *question of law,* whether upon the facts the authority *was* revoked—they were merely to inquire if the evidence establish the fact of a revocation.

The bill of exceptions does not inform us what were the instructions on this point, and we might, therefore, in obedience to a rule recognized in all appellate Courts, to intend every thing consistent with the record, in favor of the judgments of subordinate jurisdictions, infer either that the Judge gave no instructions on the point, or that he gave such as conformed to the law.

It has been decided by this Court, that the party excepting is required to show affirmatively the existence of the error of which he complains, and that the Court cannot aid him by making presumptions beyond what the record discovers.— [Johnson vs. Ballew, 2 Porter's R. 29; to same effect, Richardson vs. Dennison, 1 Aik. R. 210.]   In Adams vs. Ellis, (1 Aik. R. 24) it was held, that if a bill of exceptions be so drawn up that it cannot be learned from the record, whether error had intervened or not, though there was some reason to believe that it probably had, under such circumstances the Court was bound to affirm the judgment. [See Eaton vs. Houghton, 1 Aikin R. 380.]

There can be no question but a party has the right to require the opinion of the Court upon any point of law that is pertinent to the issue, and the refusal of the Court to give such opinion would be available on error. *But the mere neglect*

*or omission* of the Judge to instruct the jury on some material point, though it might sometimes furnish just ground for a new trial, will not warrant a reversal of the judgment. [Smith, et. al. vs. Carrington, et. al. 4 Cranch R. 71 ; Church vs. Hubbard 2 Cranch's R. 239, and Aik. Ala. Dig, § 5,.254.]

It is the conclusion of the Court that the bill of exceptions does not discover any error in the charge of the Judge to the jury.

The judgment is consequently affirmed.