## CULLUM v. BLOODGOOD, FORD, ET ALS.

1. R & F, partners, having raised money by the acceptance of Bloodgood, placed in his hands for his protection, four bills of exchange, drawn for the accommodation of R & F, by B, C, E and H. Bloodgood was compelled to pay his acceptance, and the bills of B, C, E and H, were also dishonored. R then placed in the hands of an attorney, a large amount of notes on third persons, and gave written directions, that the money, when collected, was intended to secure Bloodgood, C, E and H, and two other persons who are mentioned, B, the drawer of the other bill, who was not mentioned, having claims of R & F in his hands, on which he claimed a lien for his protection, and which he subsequently delivered up to Bloodgood, upon an understanding with him, that he was not to be held responsible on his bill. The attorney collected a portion of the money, and appropriated it according to the written directions, of which an account was rendered. Subsequently, Bloodgood brought suit against C, E and H, on the dishonored bills, and recovered a judgment against each, less than the amount of the bills, the account being present, and being made the basis of the judgment, which judgment was afterwards revived by scire facias. C afterwards filed his bill, alledging a loss by neglect of Bloodgood, and especially insisting upon an account by Bloodgood, of the claims received by him from B. Held, first, that the defendants to the suits at law, were concluded by the judgments at law, from opening the account in equity. Second, that as the accounts were all on one side, and not complicated, equity would not take jurisdiction on the score of account, a trial having been had at law, and no sufficient excuse being shown for the failure to defend there.

2. Each partner possesses an equal, and general power, in behalf of the firm, to pledge, exchange, or otherwise dispose of the partnership effects, for any, and all purposes within the scope of the partnership. One partner may assign property for the benefit of one, of several, or of all the joint creditors. Whether one partner can make a general assignment, of all the partnership effects, quere.

Error to the Court of Chancery sitting at Mobile. Before the Hon. A. Crenshaw, Chancellor.

THE bill which was filed by the plaintiff in error, alledges, that in the year 1836, the firm of Ross & Ford was indebted to John Bloodgood, in the sum of $25,000, for money which he had been compelled to pay for them as acceptor on certain

bills of exchange. That for the purpose of discharging this liability, said firm of Ross & Ford, applied to Cullum, (the plaintiff in error,) John F. Everitt, Joseph Bates, and one Wait S. Hoyt, for the use of their names, on certain bills of exchange, as follows : Everitt's bill for $6,537 25; Cullum's for $6,423 25; Bates's for $6,320 18; and Hoyt's for $6,226 28; all of which became due in 1837, and were accepted by Ross & Ford, and all of which were delivered to said Bloodgood in discharge of said indebtedness, he knowing that these bills were made for the accommodation of Ross & Ford. These bills were all protested, and the parties thereon became liable to pay the several amounts due thereon.

That on the 21st February, 1837, Ross & Ford, for the protection and indemnity of said Bloodgood, and of plaintiff in error, and the said Everitt, Bates, and Hoyt, delivered to one Charles Dellinger, the authorized agent of Bloodgood, divers notes, amounting to the sum of $29,459. That the said Bloodgood proceeded at law against the said Everitt, and Hoyt, and recovered judgment against them on their respective bills, or drafts, and also against plaintiff in error for the amount of his bill, and recovered a judgment for $6,423 78, with interest, costs, &c., and execution has issued thereon. That Bloodgood has not prosecuted any suit against Bates, because, as he alledges, the liability of said Bates has been extinguished, by the application thereto of certain notes, made by one Dumas, and others, in favor of Ross & Ford, and charges that Ross & Ford, never authorized Bloodgood to make any such application of said notes, but that the application should have been made rateably, on the whole debt of Ross & Ford.

That when the said notes were transferred to Dellinger, the parties were all solvent, and that he has collected and realized the same, but has made no appropriation thereof to the credit of Ross & Ford, or to the discharge of the bills drawn by plaintiff in error, Everitt, Bates & Hoyt.

He further charges, that he is ignorant of the true state of the accounts, but believes, and charges, that a sufficiency has been collected, to pay off and discharge the bills drawn by plaintiff in error, Bates, Everitt & Hoyt, and if not, that it has been lost by his neglect. The prayer of the bill is for

an injunction against the judgment at law, for an account, and for general relief.

Accompanying the bill as an exhibit, is the receipt of Dellinger, "Mobile, February 21st, 1837. Received of Messrs. Ross & Ford, the following bills to collect, being collateral security for certain sums due John Bloodgood, of New York;" then follows a list of the claims, amounting to $29,459 54.

Bloodgood answered the bill, and states, that Jack F. Ross, of the firm of Ross & Ford, applied to him to raise money through his (defendant's) drafts on New York, defendant to be reimbursed for money advanced to Ross, received from Ross, the four drafts of complainant and others, described in the bill. That they were not paid at maturity, and he having negotiated them, was compelled to take them up. That the notes specified in the exhibit, were delivered by Ross, to the law firm of Gordon, Campbell, & Chandler, in February, 1837. That said Ross, left with said firm, written directions, which after describing the notes, proceeds thus: The above notes, are intended to secure Mr. Bloodgood, and the parties to the following paper, viz: John F. Everitt's bill, C. Cullum's bill, W. S. Hoyt's bill, (which are described, and are the same mentioned in the bill of complaint.) Also, Ross, Hoyt & Ford's bill, on William Bloodgood, dated 7th November, 1836, at sixty days, for $6,000; and one other, dated 23d November, 1836, at sixty days, for $2,000. That said papers were placed in the attorneys' hands, with these instructions, and when any collections were made, these instructions were produced as their guide, in the application of the money.

The defendant attaches to the answer as an exhibit, an account current, showing all the collections that have been made, and the application of the money. This account was rendered before the judgment was obtained against the complainant; the original was before the court on the trial of the cause, and constituted the basis of the judgment then rendered. There was a full trial of one of the causes, and by an arrangement they were all decided on the same evidence.

In regard to the draft of Bates, he states the fact to be, that Bates held the notes on Dumas, for his own personal security, and by arrangement with Bates & Ross and Ford,

the Dumas notes were placed in the hands of lawyers for collection, and when collected to be applied in payment of the draft of Bates, in the hands of defendant; but that this arrangement was entirely separate, and distinct from the other, having no connection with it.

The judgment against plaintiff in error bears date 21st May, 1840, and is for the sum of $5,472 12, which was revived by *scire facias* on the 3d December, 1844, both of which are in full force, and have not been satisfied, or paid off. That the collections made by defendant, were all made prior to the judgments, and he then states the condition of those which have not been collected. That in making out his account current, an error intervened, which he afterwards corrected, but which by mistake was overlooked, and he is willing now that the judgment should be considered as if entered for the true sum, viz: $3,430 38.

That he is informed no more can be collected on the Dumas notes, and that the loss on the Bates debt is greater than it would have been, if his claim had been put on the same footing as the others.

Testimony was taken, which, so far as it is important, is adverted to in the opinion of the court.

The chancellor considered that there was no equity in the bill, as the complainant could have made his defence if it existed, upon the trial at law; but as the defendant admitted a mistake in the judgment, and offered to correct it, he directed the correction to be made. This decree is now assigned as error.

A. F. HOPKINS and P. HAMILTON, for plaintiff in error.

1. The bill charges, that the four bills aforesaid, which Bloodgood held were known by him to have been drawn for the accommodation of Ross and, Ford, when he received them from Ross & Ford. As his answer does not deny his knowledge of this fact, it is in effect admitted by him. 1 Porter's Rep. 375; Lecatt v. Sallee, 3 Porter, 125. As the acceptors of the bills passed them to John Bloodgood, before the maturity of them, Bloodgood had constructive notice that they were drawn for the accommodation of Ross & Ford. Wallace v. The B. Bank at Mobile, 1 Ala. 565.

2. The directions constituted no contract, for they were given by Ross alone, who had no authority to give them to the attorneys, who were no parties to the only contract which existed upon the subject, and who, by their receipt for the notes, recognized rights in Dellinger, to which the authority of Ross to give the directions was in direct opposition.

3. After the execution of the receipt by Dellinger, the implied trust created by it in favor of the complainant, could not have been impaired or altered without his assent, if Ross & Ford and Bloodgood had all agreed, that Wm. Bloodgood should receive from the collaterals, what had been improperly paid to him. Fell on Guarantees, 216, § 8; 214, § 6; 3 Atk. Rep. 91; 4 Vesey, jr. 824, 829.

4. The complainant is entitled in equity to his share of the proceeds of the collateral security, which have been applied with the approbation of Bloodgood, the defendant, to the payment of the debt due to Wm. Bloodgood, from Ross, Hoyt & Ford. The effect of this application was, to diminish. by the authority of the defendant, Bloodgood, a security to the benefit of which the complainant was entitled. The complainant has a right in equity to a discharge from his bill of exchange, to the extent of his share in the sum which was paid from the proceeds of the collaterals, to Wm. Bloodgood. 1 H. Black. Rep. 123, 136. The defence of the defendant is an equitable one, of which a court of law has no jurisdiction. McBroom v. The Governor, 6 Por. R. 45; 1 H. Black. 123, 136, note 1.

5. The attempt to make, and the failure of an equitable defence at law, does not preclude the unsuccessful defendant at law from the relief to which he is entitled in equity. McClure and others v. Colclough and others, 5 Ala. Rep. 65; 1 H. Black. R. 123, 136; 1 Wash. C. C. Rep. 320; 10 Gill & Johns. 404, 418.

6. The acceptance of the notes of Dumas by Bloodgood, the defendant, in discharge of the bill drawn by Bates, made the whole proceeding of the collateral security applicable to the three other bills, of which that drawn by complainant is one.

J. A. CAMPBELL, contra.

1. The plaintiff is concluded by the judgment at law from insisting upon the misapplication of the payments, even if such had been made. The defence should have been made upon the trials at law. 1 Vernon, 176; 10 Peters, 497; 1 Stew. 107; 6 Port. 24; 5 Ib. 547; 1 Ala. 103; 2 Ib. 21; 8 Por. 432; 7 Ib. 549.

2. The party has acquiesced in these arrangements unduly, and will not be permitted now to disturb them. Rights have vested, and settlements have been concluded upon the basis of this account, and injustice would be done by an interference. This proposition is true, even in regard to accounts which grow out of trusts, and for a much stronger reason, when the errors complained of consists of the application of moneys. 3 Johns. Ch. R. 569; 1 Bald. 394, 418; 2 Ed. Ch. R. 1.

3. We are not required to account to Cullum; Ross & Ford never having claimed one. Tripler v. Olcott, 3 Johns. Ch. R. 473.

COLLIER, C. J.—The complainant and Everett, Hoyt, and Bates, with the view of reimbursing the defendant, John Bloodgood, about twenty-five thousand dollars, which he had advanced for Ross & Ford, drew four several bills on the latter; these bills were accepted, and the acceptors failing to meet them at maturity as they had undertaken, they were protested for non-payment. In order to protect the complainant and the other drawers of the bills, and to indemnify Mr. Bloodgood, Ross & Ford placed in the hands of C. Dellinger, the agent of Mr. Bloodgood certain notes and other securities, for money due them from third persons, amounting to about $29,000. These securities have been realized, and notwithstanding their collection, Bloodgood has made no appropriation of their proceeds to the payment of the bills; but has recovered judgments against the complainant and Everett and Hoyt, and is seeking to enforce the judgment against the complainant. The bill particularly alledges these facts, prays that an account be taken, and that the judgment against the complainant be perpetually enjoined.

Conceding that the allegations of the bill are founded in truth, and they show that the complainant had a defence

which he might have asserted at law. They affirm a contract between Ross & Ford and Bloodgood, through his agent Dellinger, to apply the collections made upon the collateral securities to the payment of the bills. This contract was not for the exclusive benefit of the acceptors, but inured also to the drawers, and it was competent for the latter to show the amount collected, and insist upon its appropriation to the extinguishment of their liabilities. To have made out the defence it was not necessary at law, any more than in equity, to prove that the money collected, went into Bloodgood's hands—the receipt of it by his attorneys at law, would be as effectual in one court as the other. In either case it would be money received for the use of the party, to whose benefit it was to be applied, and if it was converted to other purposes by Bloodgood, or his agents, it was no less a payment under the contract, in virtue of which the securities were delivered.

This being the case, we can conceive of no objection to the legal defence. It has been repeatedly held, that where money is deposited with one person to be handed to another, or where money is received by a trustee under an assignment for the benefit of creditors, in either case the beneficiary may maintain an action for money had and received. Hitchcock et al. v. Lukens & Son, 8 Port. Rep. 333; Stewart v. Conner, 9 Ala. R. 803; Huckabee v. May, 14 Ala. 263, and citations there found.

But it is insisted that the equity of the bill is defensible on the ground that the controversy embraces matters of account between the parties. It must be admitted, that "in matters of account, growing out of privity of contract, courts of equity have a general jurisdiction where there are mutual accounts, (and a fortiori where those accounts are complicated;) and also where these accounts are on one side, but a discovery is sought, and is material to the relief. But on the other hand, where the accounts are all on one side, and no discovery is sought or required; and also where there is a single matter on the side of the plaintiff seeking relief, and a mere set off on the other side, and no discovery is sought or required, in such cases courts of equity will decline taking jurisdiction of the case." 1 Story's Eq. 441; Kirkman et al. v.

Vanlier, 7 Ala. Rep. 217 and cases there cited. In the case at bar, the complainant's indebtedness was ascertained by the bill which he drew, and if any part of the transaction in question rested in account, it was the collections made by Bloodgood on the collateral securities. Here then the accounts are all on one side—by no means complicated, and from any thing alledged in the bill, we cannot infer that a discovery is necessary. It should rather be inferred from the manner in which the complainant has stated his case, that the proof was accessible through the debtors of Ross & Ford, whose debts were transferred, or the attorneys to whom the collection of them was entrusted. The case then does not come under the head of equity jurisdiction, which the parties have invoked. See also, Halstead v. Rabb, 8 Porter's Rep. 63; Poage v. Wilson, 2 Leigh's Rep. 490; Knotts v. Tarver, 8 Ala. Rep. 742.

It is a general rule, so well established as to have become an axiom, that a court of chancery will not entertain a cause where the complainant has a plain and adequate remedy at law. Where no circumstances of surprise, accident, or fraud, appear to have prevented a party from having a full and fair trial at law, upon the matters which form the ground of his application to equity, an injunction will not be granted. Holding v. Holding, 1 Murp. Rep. 10. After a cause has been fully tried and decided in a court of law, equity will not give relief. So where a defence is purely legal, and the defendant was advised, or might have become informed of it with proper diligence, and was under no disability, equity will not interfere, if he failed to avail himself of it. In such case it devolves upon the complainant to show some sufficient excuse for the failure to defend himself. Perhaps, if the defence be one of which the two tribunals have concurrent jurisdiction, and the defendant fails to assert it at law, he may notwithstanding resort to a court of equity; but if he attempts to defend himself in the former tribunal, and fails, he cannot have the matter retried in the latter. Harrison v. Harrison, 1 Litt. Rep. 137; Morrison's Ex'r v. Hart, 2 Bibb's Rep. 4; Wilson v. Cheshire, 1 McC. Ch. Rep. 241; Morris v. Ross, 2 Hen. & M. Rep. 408; Vanlew v. Bohannan, 4

Rand. Rep. 537; French v. Garner et al, 7 Por. Rep. 549; Lee & Norton v. Ins. Bank of Columbus, 2 Ala. R. 21; Pharr & Beck v. Reynolds, 3 Ala. Rep. 521; Stinnett and another v. The Branch Bank at Mobile, 9 Ala. Rep. 120; Duncan v. Lyon, 3 Johns. Ch. Rep. 351; Murray v. Toland, Id. 569. The principles we have stated are quite sufficient to show, that the bill does state a case which entitles the complainant to relief in respect to the collateral securities delivered to the agent of Bloodgood.

If the complainant was entitled, under a contract with Ross & Ford, to have any part of the sum collected on the notes of Dumas, appropriated to the extinguishment of his liability as drawer of the bill, for the accommodation of the acceptors, he might have reduced the amount of the judgment against him, *pro tanto*, by making his defence before a jury. The bill does not distinctly alledge such to have been the fact; and if we look out of the bill to the answer of Bloodgood and the proofs, the reverse is most manifest. It is perfectly clear, the transaction between Ross, Bates & Campbell, in respect to these notes, was intended to transfer to Bates a special lien upon a sufficient amount of the proceeds, to extinguish his liability as an accommodation drawer for Ross & Ford. Such too, must be its legal effect, unless it was indispensable to the validity of the arrangement, that it should have had the sanction of Ford.

Mr. Justice Story, in his Treatise on the Law of Partnership, (§ 101,) says, "each partner *virtute officii*, possesses an equal and general power and authority in behalf of the firm, to transfer, pledge, exchange, or apply, or otherwise dispose of the partnership property, or effects, for any and all purposes within the scope and objects of the partnership, and in the course of its trade and business. The power extends also to assignments of property of the firm, as a security for antecedent debts, as well as for debts thereafter to be contracted on account of the firm. Nor will it make any difference, whether the assignment be for the benefit of one creditor, or of several, or of all the joint creditors." But the learned author concedes, that "it may well admit of some doubt, whether this power extends to a general assignment of all the funds and effects of the partnership by one partner for the

benefit of creditors." Id.; see also, citations in the notes; also, § 126, and citations in notes. In Egberts v. Wood, 3 Paige's Rep. 517, the right of either of the partners, before the dissolution of the partnership to apply the funds of the firm to the payment of one creditor to the exclusion of another, is distinctly recognized. If this be the law, and we believe that there is no conflict in the decisions upon the point, it was entirely competent for Ross, without the concurrence of Ford, to have made such a disposition of Dumas's notes as entitled Bates to the money collected on them for his indemnity. The proof entirely relieves the transaction from suspicion, or *mala fides*, on the part of either of the parties, and there is no ground on which a court of chancery can deny to it validity.

This view relieves us from the necessity of considering the questions which have been raised as to the lien of the several partners upon the effects of the firm, for the partnership debts, and how far this lien may be made available at the the suit of a creditor. See, however, Story on Part. §§ 97, 132, 133, 259, 260, 263, 326, 357 to 361, 390, 391; Tripler v. Olcott, 3 Johns. Ch. Rep. 473. We will not stop to inquire whether, if a proper case for equitable interference, was made out, the defendant has not slumbered too long upon his supposed grievances.

The questions considered are the only ones presented by the bill, and upon these we have already said, the complainant is not entitled to the relief he seeks. The decree is consequently affirmed.