# Warren *v.* Taylor *et al.*

*Bill in Equity for Settlement of Partnership Accounts, and Foreclosure of Mortgage.*

1. *Partner's lien on partnership property.*—On the settlement of partnership accounts, each partner has a lien on the partnership effects, not only for the payment of partnership debts, but also for the payment of any balance due to him from his co-partner on a proper accounting between them.

2. *What are partnership debts.*—A bill of exchange drawn in the name of the partnership, with the knowledge and consent of both partners, is a partnership debt, though used, and intended to be used, in borrowing money for one of the partners individually; and even if the firm name was signed by the partner for whose accommodation the bill was drawn, without the knowledge or consent of his co-partner, but the lender had no knowledge of the intended use to which the money was to be applied, "we are not prepared to say the debt would not be a partnership liability."

3. *Conflicting liens of partner and individual mortgagee or creditor.*—When the partnership name is used, with the consent of both partners, in borrowing money for the individual accommodation of one, who, executes to the other a mortgage on his interest in the partnership property as security, and the latter pays the debt, his lien as a partner on the partnership property, for the sum so paid, is not dependent on the mortgage or its registration, and is superior to the lien of a prior unrecorded mortgage, of which he had no notice, but which was recorded before his, and was given for the individual debt of his co-partner.

APPEAL from the Chancery Court of Tuskaloosa.
Heard before the Hon. CHARLES TURNER.

[Warren v. Taylor et al.]

The original bill in this case was filed on the 7th April, 1875, by John F. Warren, against Joseph W. Taylor and Mrs. Mary C. Benagh; and sought a settlement of a partnership which had existed between the complainant and said Taylor, the foreclosure of a mortgage which said Taylor had given to complainant on his interest in the partnership effects, and the adjustment of the conflicting liens of complainant's mortgage and a mortgage owned by Mrs. Benagh. The partnership was formed on the 1st January, 1872, "for the purpose," as the bill alleged, "of publishing a weekly newspaper in the town of Tuskaloosa, to be called the *Tuskaloosa Times*, and also for the purpose of carrying on a general job printing business connected with said newspaper office." The articles of partnership, which were made an exhibit to the bill, contained the following stipulations: "1. The style of said co-partnership shall be Taylor & Warren, and shall continue indefinitely, except in case of the death of either of the said partners, or mutual agreement for an earlier dissolution. 2. The said partners each contribute as follows: the said Taylor contributes all the type, material, furniture, and good-will of the late *Independent Monitor;* and the said Warren contributes all the type, material, furniture, and good-will of the late *Tuskaloosa Observer*. 3. All profits which may accrue to said partnership shall be equally divided, and all losses happening to said firm, whether from bad debts or any other cause, and all expenses to the business, shall be equally borne by the said partners. 4. The books of said co-partnership shall be regularly kept, and shall always be open to the inspection of both of said partners, and their legal representatives; and an account shall be stated between said partners once a month. 5. The partnership name is to be used only in respect of the affairs and business of the firm, and neither of said partners shall subscribe any bond, sign or indorse any promissory note, accept, sign or indorse any draft or bill of exchange, or assume any other liability, parol or written, either in his own name, or in the name of the firm, for the accommodation of any other person or persons whatever, without the consent of the other party; nor shall either party lend any of the funds of the co-partnership, without the consent of the other partner. 6. Each partner, at the expiration of each month of the partnership, may withdraw, if a balance of profits be due to him, such balance; but neither partner shall withdraw at any time more than his share of the net profits of the business then earned. 7. For the purpose of securing the performance of the foregoing agreements, it is mutually agreed that either party, in case of a violation of them or either of them

by the other, shall have the right to dissolve this copartnership forthwith."

By mutual consent, the complainant acted as the business manager of the affairs of the partnership, making collections, paying debts, &c.; and monthly balances were struck, as provided by the articles of partnership, until December, 1874, or January, 1875. In March, 1875, disagreements arose between the partners, growing principally out of the mortgages mentioned in the bill, and they agreed to a dissolution. In the complainant's bill, and in the answer and cross-bill filed by Taylor, each party charged the other with a violation of the articles of partnership, in appropriating and failing to account for partnership moneys collected; and each insisted that, on a proper settlement of the partnership accounts, a balance would be found in his favor; but these matters are not material to an understanding of the case, as here presented. On the 22d July, 1874, for the purpose of enabling Taylor to procure money for his private uses, two bills of exchange were drawn in the name of the partnership, with the consent of Warren, by whom they were accepted, payable to James H. Fitts & Co., bankers in Tuskaloosa, who advanced the money on them to Taylor, together amounting to $1,000, and payable in thirty days; and to secure Warren against liability on his acceptances of these bills, Taylor executed to him a mortgage on his undivided half interest in the partnership business and property, and also on a tract of land in Greene county in which he had an interest. The bills, not being paid at maturity, were several times renewed; and on the 2d October, 1874, a new bill was drawn in the firm name, and accepted by Warren, for $1,000, and a new mortgage given to secure it, as before. On the 1st March, 1875, the debt was again extended, and a new bill given, which was drawn by Warren, and accepted by the partnership; and instead of giving a new mortgage, a memorandum was indorsed on the former mortgage by Taylor, to the effect that it was "*extended and made to cover*" the new bill. This mortgage was recorded on the 27th March, 1875; and the said bill of exchange, not being paid at maturity, was regularly protested, and was paid by the complainant before filing his bill in this case.

Mrs. Benagh's mortgage also originated in a loan of money to said Taylor on the 8th January, 1874, for which he executed to her his promissory note, and a mortgage on his undivided half interest in the newspaper and printing office. This mortgage was not recorded, but was renewed every three months; and on the 8th January, 1875, a new note and mortgage were given, which matured on the 8th January,

1876, and the old note and mortgage were delivered up and cancelled. This new mortgage was recorded, by the advice of counsel, on the 23d March, 1875. An answer and cross-bill were filed by Mrs. Benagh, setting up her mortgage, praying a foreclosure, and insisting that she was entitled to priority over the complainant's mortgage.

On final hearing, on pleadings and proof, the chancellor held that the complainant had no lien as a partner, on account of the secured debt which he had paid, but must rely only on his mortgage ; and that Mrs. Benagh's mortgage, having been first recorded, was entitled to a preference and priority over his mortgage ; and he rendered a decree accordingly, which is now assigned as error by the complainant.

SOMERVILLE & McEACHIN, and S. A. M. WOOD, for appellant.—The general doctrine is indisputable, that one partner can not lawfully sell, transfer, or mortgage his interest in the partnership property, except it be done subject to the equitable lien of partnership debts and liabilities ; in other words, that the mortgagee can only claim what remains of the mortgagor's interest after the payment of the firm debts.—1 Story's Equity, 642, § 677 ; Parsons on Partnership, 366–7, 356, note c ; *Winston v. Ewing*, 1 Ala. 129 ; *Andrews v. Keith*, 34 Ala. 722 ; 3 Ala. 319 ; *Sitler v. Walker*, 1 Freeman's Ch. (Miss.) 77 ; *Bank v. Carrolton Railroad*, 11 Wallace, 624 ; *Rodriguez v. Heffernan*, 5 John. Ch. 417 ; *Cavender v. Bulteel*, 8 Eng. Rep. 743. The debt secured by the complainant's mortgage, although created for the individual benefit of Taylor alone, and outside of the regular business of the partnership, was nevertheless a partnership transaction, executed in its name, with the express sanction of both partners, and for the purpose of borrowing money on its credit. There can be no doubt that, so long as the bill was held by the parties who had advanced the money on it, it was primarily a partnership debt ; and its payment by the complainant did not change its character, although he was liable personally on it. "It is frequently necessary for the salvation of the partnership," said Lord Eldon, "that the private demand of one partner should be satisfied at the moment ; for the ruin of one partner would spread to the others, who would rather let him liberate himself by dealing with the firm."—8 Vesey, 540. See, also, 3 Kent's Com. (4th ed.) 41, 44 ; *Mechanics' Bank v. Livingston*, 33 Barbour, 458 ; *Fagan v. Long*, 30 Missouri, 224 ; Parsons on Partnership, 212, note d, 226, 140-41 ; Story on Partnership, § 133, notes, §§ 360-61 ; Parsons on Mercantile Law, 178 ; 14 Wendell, 133-46 ; *Mauldin v. Br. Bank*, 2 Ala. 502 ; *Foot v. Sabin*, 19 Johns. 154-57 ; Story's

Equity, vol. 1, § 675. Moreover, Mrs. Benagh, having knowledge of the existence of the partnership, and being presumed to know the law which regulates the rights and liabilities of partners, was put upon inquiry when dealing with one partner, and thus chargeable with notice of complainant's claim. *Jones v. Webster*, 48 Ala. 109; 5 Johns. Ch. 427.

HARGROVE & LEWIS, *contra.*—As between the two mortgages, Mrs. Benagh's is entitled to priority, because it was first recorded (Rev. Code § 1561), unless she is chargeable with notice, actual or implied, of the complainant's mortgage. There is no pretense that she had actual notice, and the effort is to charge her with constructive notice, on account of her knowledge of the existence of the partnership. The case of *Jones v. Webster*, 48 Ala. 109, cited to this point, is a strong authority against the appellant, when properly understood and applied. The general principle is recognized and admitted, that Mrs. Benagh's mortgage conveyed only Taylor's interest in the property after the payment of the partnership debts.—*Lang v. Waring*, 17 Ala. 145; *Andrews v. Keith*, 34 Ala. 722. But the bill of exchange paid by Warren was, in no just sense, as between these parties, a partnership debt: it was created for the individual benefit and accommodation of Taylor alone, was entirely outside of the scope and business of the partnership, and was regarded by the parties themselves as a private transaction. The mortgage was given to secure Warren personally and individually, and he stands in the same position any other creditor would occupy. No change in the positions of the parties to the bill can, in equity, affect their relations, rights, or liabilities.—25 Ala. 253; 14 Ala. 33, 633; 4 John. Ch. 65; 10 S. & M. 128. There is no room for an application of the doctrine of subrogation. If Warren had not paid the bill, Fitts & Co. might have been subrogated to his rights, and had the mortgage foreclosed for their own benefit; but they had no lien on the partnership effects.—*Donelson v. Posey*, 13 Ala. 769; *Mayer v. Clark*, 40 Ala. 259.

STONE, J.—Money was borrowed separately from two persons, each transaction having its inception about the same time—January, 1874. The evidence of the indebtedness was in each case renewed from time to time, and mortgages given as security on the same property—the borrower's interest in the " *Times*" newspaper and its property. In the case of Mrs. Benagh's loan, the first mortgage was executed directly to her, on the same date as the loan, January 8th, 1874. This mortgage was renewed every three months.

In the loan by Fitts & Co., bankers, the bill of Taylor & Warren, partners and joint-owners of the *Times* newspaper, was taken as security, due at a short interval. This debt was increased during the year, and was renewed every thirty days. A mortgage on Taylor's interest in the *Times* newspaper was given to Warren, to indemnify him against the use of the firm name, Taylor & Warren. This mortgage was also renewed at short intervals. At the request of Taylor, none of the mortgages were put on record, until March, 1875. Each series of mortgages was renewed, within every three months; and this, it was believed, would preserve the lien from the date of the several mortgages given in renewal, without expense and notoriety of registration. In other words, it was believed that mortgages on personalty might be recorded within three months after their execution, and this would operate constructive notice to creditors and purchasers from their date. Each of the loans was for the personal use of Mr. Taylor, and no part of the money was applied to the purposes of the partnership of Taylor & Warren. Neither Mrs. Benagh, nor Mr. Warren, knew of the mortgage to the other, or that the other loan had been negotiated. On the 23d of March, 1875, Mr. Taylor being short in the payment of interest, promised quarterly, to Mrs. Benagh, she consulted counsel, and, on his advice, had her mortgage recorded on that day. Warren's mortgage was recorded four days afterwards. The question presented is, which has the paramount claim on the mortgaged property? Warren has paid up the bill to Fitts & Co., out of his private funds; and he is the actor in this suit.

1. In settling partnership accounts, each partner is clothed with the right to insist that the partnership effects shall be first applied to the payment of the partnership debts; and this right will prevail over the claims of an alienee or creditor of the co-partner. So clearly defined is this right—so necessary to persons engaging in joint adventures of this kind—that it has been long and firmly settled, that each partner has a lien on the effects, that they shall be applied primarily to the extinguishment of the partnership liabilities. This results, naturally and necessarily, from the nature of the enterprise, and of the title by which the property is held. The title is in the company, or association of individuals, and no one of the number has a separate ownership or right to any part or piece of the property or effects of the partnership. And the lien goes further than this. After the debts are all paid, each partner has a lien on the remaining partnership effects, for any balance due him upon a proper accounting together.—1 Story's Eq. Ju. § 677; *Moore v. Smith,*

[Warren v. Taylor et al.]

19 Ala. 774; *Donelson v. Posey*, 13 Ala. 752; *Cannon v. Cope-*
*land*, 43 Ala. 201; *McGown v. Sprague*, 23 Ala. 524; *Rey-*
*nolds v. Mardis*, 17 Ala. 32; *Reese v. Bradford*, 13 Ala. 837;
*Lucas v. Atwood*, 2 Stew. 378; *Emanuel v. Bird*, 19 Ala. 596;
*Bridge v. McCullough*, 27 Ala. 661; *Waldron v. Simmons*, 28
Ala. 629; *Andrews v. Keith*, 34 Ala. 722; *Coster v. Bank of*
*Georgia*, 24 Ala. 37; Parsons on Partnership, 265, 350, 351,
352, 168, 502; *Bank v. Carrolton Railroad*, 11 Wall. 624;
*Rodriguez v. Heffernan*, 5 Johns. Ch. 417; *Sitler v. Walker*, 1
Freem. Ch. Rep. 77.

2. The disputed question in this case is, whether the
claim of Warren is a partnership demand. There can be no
question that it was a partnership debt, so long as it re-
mained unpaid to Fitts & Co.; and they could have claimed
and asserted all the rights against the partnership and its
effects, which the law accords to partnership creditors. The
bill was executed in the firm name, with the knowledge and
consent of both partners; and this bound the firm. Even if
the firm name had been signed by one, without authority
from the other, the bill was made to be used, and was used
in borrowing money; and there is no evidence that Fitts &
Co. knew the use to which the money was to be applied.
We are not prepared to say the debt would not have been a
partnership liability, even if the bill had been executed as
last supposed.—*Knapp v. McBride*, 7 Ala. 19; *Jemison v. Dear-*
*ing*, 41 Ala. 283; *Cullum v. Bloodgood*, 15 Ala. 34; 2 Brick.
Dig. 306, § 103; *Sprague v. Zunts*, 18 Ala. 382.

The relation between partners is one of generous confi-
dence. In the absence of special agreements to the con-
trary, the law constitutes each the agent of the other, and
the representative of the firm in the conduct of all the ordi-
nary business of the partnership. The act of one is the act of
all. If it be a mercantile partnership, a sale by one is a sale
by all. And a payment to one member of the firm discharges
the debt, although that member may misapply or squander
the money. It is not unfrequently the case, that one part-
ner becomes more indebted to the firm than another. He
may use more of the income and effects in his personal and
private affairs,—may overdraw his share, or may anticipate
future receipts and emoluments, sometimes with, and some-
times without his co-partner's knowledge or permission. In
either case, his share of the profits, or of the capital, if
needed, will stand incumbered by a lien, to make good such
deficit to his co-partner; and that lien will be paramount to
the right of any alienee or creditor of his. "In general,
when a sum of money is advanced to a partner, or a partner
is permitted to take it as a loan, and there are no express

terms agreed on, his profits are in the first place answerable; and if they are insufficient, his share of the stock goes to discharge this balance ; and if that is insufficient, he becomes a personal debtor for the balance."—Parsons on Partnership, 241. See, also, 3 Kent's Com., marg. pp. 40 *et seq.*

If, instead of borrowing the firm's credit to raise money on, Mr. Taylor had used its money, or had hypothecated its bills-receivable, and thus realized the sum of them on his private account—and this, either with or without Mr. Warren's consent—the rule above declared would have applied in all its force, and Mr. Warren would have held a lien. So, if there had been a partnership debt of Taylor & Warren, and Mr. Warren had paid it out of his private funds, this would have given him a claim and lien against Taylor's interest in either profits or capital of the partnership, paramount to the rights of creditors of, or purchasers from Taylor. And such creditor or purchaser would have no right to complain : for he would realize, by the transaction, all that Taylor could claim. He would be entitled to no more. In other words, Mrs. Benagh, in this suit, can claim what Taylor could claim, if he were suing Warren ; no more. She purchased no other right.—See *Donelson v. Posey*, and other authorities *supra*. She cannot complain of this ; for, purchasing a partner's interest in partnership effects, it was her duty to inquire of the other partner, how the account stood between them.

It will be seen that we have placed Warren's superior claim on the lien which the law gave him as a partner. Hence, it was not necessary for him to take a mortgage, or, taking it, to have it recorded. When he incurred the liability for Taylor, by allowing him to pledge the credit of the firm, he had no knowledge or notice of Mrs. Benagh's claim. We need not, and do not decide, that his claim would prevail over Mrs. Benagh's, if, before the firm became bound to Fitts & Co., he had been notified of the conveyance to her.

We hold that, after taking a proper account between the partners, charging Taylor with the sum paid Fitts & Co. and interest, as so much paid to and for him by Warren, the business manager ; and charging to each partner all proper debits, and allowing to each all proper credits, if a balance be found due to Warren, he has a first lien on the partnership effects, income and capital, for its payment. This is his share in the partnership effects, and he is entitled to it, before Mrs. Benagh can take any thing by her mortgage. Any balance to be equally divided between Warren and Taylor, the interest of the latter, as far as necessary, to be applied to the payment of Mrs. Benagh's mortgage, and interest

(15)

thereon from January 1st, 1876. Should the balance, on taking the account, be found in favor of Taylor, and against Warren, then such balance to be a first lien in favor of, and applied, as far as necessary, to the payment of Mrs. Benagh's mortgage debt, computed as above. Any balance of partnership effects to be equally divided between the partners; Taylor's share to go to Mrs. Benagh, so far as necessary to extinguish her mortgage claim. If any thing be realized from the mortgaged property in Greene county, the product to be applied to the payment of Warren's claim, if necessary, after exhausting the partnership effects. Should any of the partnership property and effects be used in paying a balance found due to Warren, and should any portion of Mrs. Benagh's claim remain unpaid; and should there remain a surplus of proceeds of the Greene county mortgaged property, after paying Warren's claim, then, to the extent that Taylor's interest mortgaged to Mrs. Benagh is applied to Warren's claim, she, Mrs. Benagh, is subrogated to the mortgage rights of Warren in the surplus of the proceeds of the Greene county mortgaged property.

The decree of the Chancery Court is reversed, and a decree is here rendered, in accordance with the principles declared above. Costs of appeal to be paid by the appellees.

It is referred to the register to take proof, and report an account to the Chancery Court, being governed in the matter of taking the testimony by directions of the chancellor in his decree rendered in this cause. All other questions, including the costs of the original suit, to be determined by the chancellor.

*Bill in Equity for Settlement of Partnership Accounts.*