# Evans, Fite, Porter & Co. *v.* Winston.

*Bill in Equity by Creditor, seeking to have Mortgages declared and enforced as General Assignment.*

1. *Marshalling assets between individual and partnership creditors.* Partnership creditors can assert no lien on partnership property, for the payment of their debts ; though such lien may be worked out for their benefit, by a partner asserting his right to have the partnership effects applied to the extinguishment of the partnership liabilities ; and a court of equity, in administering the effects of an insolvent partnership, will apply them primarily to the payment of partnership debts, while the

[Evans, Fite, Porter & Co. v. Winston.]

separate property of the individual partners will be devoted primarily to the payment of their individual debts.

2. *Assignment by insolvent debtor, giving preference to individual over partnership creditors.*—An insolvent debtor, in making an assignment of all his property, may devote his individual property primarily to the payment of his individual debts.

3. *Burden and sufficiency of proof.*—The *onus* of proof resting on the complainant to establish his case, if the evidence adduced is doubtful, or in equipoise, he is not entitled to a decree.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 20th July, 1880, by the appellants, a mercantile partnership doing business in Nashville, Tennessee, against Edmund C. Winston and John M. Nail; and sought to have two mortgages, executed by said Nail to said Winston, declared a general assignment under the statute (Code, § 2126), enuring to the equal benefit of all the grantor's creditors. The complainants were creditors of said Nail, and had reduced their demand to a judgment, rendered on March 10th, 1880. The mortgages to Winston, copies of which were made exhibits to the bill, were dated respectively on the 13th January, 1877, and the 22d April, 1878; and they conveyed, with power of sale, certain lands which constituted the bulk of the mortgagor's property. The first of these mortgages purported to be given to secure the payment of a promissory note for $150, executed by said Nail, under seal, of even date with the mortgage, and payable to said Winston on the 25th July next after date; and the other, to secure the payment of said Nail's promissory note, under seal, for $450, of even date with the mortgage, and payable on the 25th December, 1878. On the same day this latter mortgage was executed, but at a later hour, as the defendants alleged and insisted, said Nail executed a third mortgage on the lands, conveying his equity of redemption therein to the complainants, to secure an indebtedness of $400, as recited; but the complainants claimed that their debt then exceeded $600, and they offered in their bill to do and perform whatever the court might require in the matter of their mortgage.

The complainants' debt was contracted for goods sold and delivered by them to Reedy & Nail, a mercantile partnership doing business in Tuscumbia, Alabama, which firm was composed of said John M. Nail and Frank Reedy, since deceased. A copy of the account, or list of the items composing it, was made an exhibit to the deposition of said Nail; the account commencing January 17th, 1877, ending July 27th afterwards, and aggregating $605. The consideration of the first mortgage to Winston, as alleged in his answer, was "$150 loaned to said Nail by this respondent at the time of the execution of said

mortgage;" and of the second, "$450 loaned to said Nail by this respondent at the time of the execution of said mortgage." The consideration of the first mortgage was stated in the answer of Nail to be, "$150 loaned at that time by said Winston to this respondent, then entering into a mercantile partnership with Frank Reedy, under the firm name of Reedy & Nail;" and of the second, "$450, money loaned at that time by said Winston to this respondent, to enable and aid him to continue and carry on a mercantile business which he was then doing, under the partnership name of Nail & Rand, the firm of Reedy & Nail having been before that time dissolved by the death of said Reedy." The testimony of said Nail as to the consideration of these mortgages, which was all the evidence adduced, is copied in the opinion of the court. The insolvency of Nail, at the time of the execution of the two mortgages in April, 1878, was alleged and proved; though he insisted, in his answer, that the land was worth more than the amount of the mortgage debts, and no other debts against him were proved.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without prejudice, on the authority of *Perry Insurance & Trust Co. v. Foster*, 58 Ala. 502; and *Eskridge v. Abraham*, 61 Ala. 344. The complainants appeal from this decree, and here assign it as error.

WM. COOPER, for appellants, cited *Danner & Co. v. Brewer & Co.*, 69 Ala. 191; *Seaman v. Nolen*, 68 Ala. 463; *Lehman, Durr & Co. v. Collins*, 69 Ala. 127.

BRAGG & THORINGTON, with whom was JAMES JACKSON, contra, cited *Bank of Mobile v. Dunn*, 67 Ala. 384; Story on Partnership, § 363; *Shirley v. Teal*, 67 Ala 449; *Wells v. Morrow*, 38 Ala. 129; *Rogers v. Adams*, 66 Ala. 602.

STONE, J.—Creditors have no lien on partnership property, for partnership debts. The lien, when worked out for the benefit of creditors, is the copartner's right and lien, that partnership effects shall be first applied to the extinguishment of partnership liabilities. The creditor can not assert the lien, of his own mere will. The partner has a paramount right that all partnership debts shall be provided for, before individual creditors can possess themselves of his copartner's interest in the property of the firm; and when this right and lien are asserted, the creditor reaps the benefit.— *Warren v. Taylor*, 60 Ala. 218, and authorities therein collected. So, when equity administers the effects of an insolvent partnership, it applies partnership effects primarily to the payment of partnership lia-

bilities, and individual property, to the payment of individual debts.—Sto. Part. § 363.

In *Bank of Mobile v. Dunn*, 67 Ala. 381, we recognized the right of an insolvent debtor, in making an assignment of all his property, to devote his individual property primarily to the payment of his individual debts. This was justifiable, and only justifiable, on the principle stated above—namely, that in the administration of a bankrupt, or insolvent debtor's assets, equity will apply individual property, first, to the payment of individual liabilities, and partnership property, first, to the payment of partnership debts.

The claim of Evans, Fite, Porter & Co. was and is a debt due from a partnership. It was contracted and incurred, either by Reedy & Nail, or by Nail & Rand, or, possibly, by each firm in part. Each firm was engaged in a retail mercantile business, and the debt was incurred in the purchase of merchandise from the complainants, who, it is reasonable to infer, were wholesale dealers. The character of Winston's claim is not very clearly defined. The testimony bearing on it is that of Mr. Nail, and none other, except the face of the bills single. They are made in the name of Nail alone. Nail's testimony. copying from his deposition, is, "The consideration of the two notes and the two mortgages executed to Edmund C. Winston, was for borrowed money from Winston, to invest, 1st, in firm of Reedy & Nail, and, 2d, in firm of Nail & Rand." As we have said, this language is not very definite. It may mean that Nail's object in negotiating the loan was to obtain funds with which to supply or replenish the stocks of the several firms. If this was so, then it would stand in the nature of a partnership liability. But this is not its necessary, or most natural meaning. To "invest in," is the language. To obtain, or purchase an interest in the several firms—in other words, to furnish his share of the capital stock, is its most natural signification; and the fact that only Nail's individual obligation was given for the repayment of the money, strengthens this view. It is not, however, necessary that the evidence in favor of this view should so far preponderate as to convince us. Evans, Fite, Porter & Co. being complainants, the *onus* of making out their case rested on them. Sufficient for Winston that the testimony was in equipoise. We may add, that we do not understand it to be controverted, that the debt to Winston is the debt of Nail alone, and that the property mortgaged was his individual property. This case, then, is brought directly within the influence of the case of *Bank of Mobile v. Dunn*, 67 Ala. 381.

The decree of the chancellor is affirmed.