# Daniel v. Owens & Co.

*Bill in Equity for Injunction against Sale of Partnership Goods, under Execution against Partner.*

1. *Levy and sale of partnership goods, under execution against one partner.*—An execution against the property of one partner individually may be levied on his interest in the partnership goods; but the purchaser at the sale, under such levy, would acquire only the individual interest of the partner, subject to all the liens, incumbrances and charges, which rested on it in favor of the partnership, its creditors, or the other partners.

2. *Same; equitable relief against sale.*—If a court of equity has jurisdiction, in any case, to enjoin a sale of partnership property under execution against one of the partners individually, "it can only be called into exercise by clear and strong averments, showing the injury which must result from a disturbance of the possession consequent upon the levy." An averment that irreparable injury will result, because the partnership is engaged in farming operations, and the articles levied on, guano and cotton-seed, were advanced to them under the statute to enable them to make a crop, and are necessary to the successful cultivation of a crop, is not sufficient.

3. *Same ; remedy for excessive levy.*—If the sheriff, having an execution against one partner individually, should levy on and sell the entire interest in partnership goods, this would be a conversion, for which the other partner might maintain trover; and such excessive levy might constitute the sheriff a trespasser *ab initio,* for which an action would lie in the name of the partnership.

4. *Same; extent of levy, and rights of purchaser.*—An execution against one partner individually can not be levied on any one specific article belonging to the partnership, but only on the partner's interest in the whole of the partnership assets; and the purchaser at the sale does not acquire the right to hold possession of the property purchased, as against the other members of the firm.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 5th April, 1880, by John Daniel, against the persons composing the firm of Owens & Co., the persons composing the firm of Henderson Brothers & Co., and the complainant's partner, John A. Daniel; and sought, principally, to enjoin a sale of certain guano and cotton-seed under the levy of an execution in favor of said Owens & Co., against said John A. Daniel individually. The complainant and said John A. Daniel, according to the allegations of the bill, were " engaged as partners in the business of farming in said county, under an agreement to cultivate certain rented lands in corn, cotton, and other produce, and to divide the net profits accruing therefrom equally between themselves; and being unable to carry on their enterprise and said business from their own resources, they were compelled to procure the necessary stock, provisions, fertilizers, and other materials necessary to the successful cultivation of their said crops, from said Henderson Brothers & Co.; and to secure the payment of the articles thus furnished and advanced, they executed to said Henderson Brothers & Co. a note and mortgage, a copy of which" was made an exhibit to the bill. This note and mortgage were each dated February 21st, 1880, purported to be given to secure a debt of $1,500 due October 1st, 1880, for advances made and to be made by the mortgagees to enable the mortgagors to make a crop, and to create a statutory lien, " under sections 1858–60 of the Revised Code (3286–88 of the Code of 1876)," on the entire crop grown by the mortgagors, with other personal property. The entire amount advanced by Henderson Brothers & Co. under this note and mortgage, the bill alleged, was more than $2,200 ; and among the articles bought and furnished " was a lot of cotton-seed, amounting to about two thousand bushels, and eight and two-thirds tons of guano." On the 24th January, 1880, Owens & Co. recovered a judgment against said John A. Daniel, before a justice of the peace, for $78.53. This judgment was founded on a note given for a debt due from said John A. Daniel individually to Owens

[Daniel v. Owens & Co.]

& Co., which contained an express waiver of all exemptions; and the waiver was embodied in the judgment, and in the execution issued thereon.

As to the levy of this execution, and the grounds on which equitable relief was sought against it, the bill contained the following allegations : "Said execution was placed in the hands of John A. Folmar, the sheriff of said county, and was by him levied on one ton of guano and six hundred bushels of cotton-seed, which was the joint property of complainant and said John A. Daniel, and had been advanced to them by said Henderson Brothers & Co., and was a part of the said lot above mentioned, for which said note and mortgage were given. The said guano and the said cotton-seed were advanced to complainant and said John A. Daniel, by said Henderson Brothers & Co., for the purpose of making a crop, and the same was held by them to be used and appropriated for that purpose; and by the sale thereof complainant would suffer irreparable injury and loss, as both are needed in the successful cultivation of said crops, and would seriously impair the ability of complainant and said John A. Daniel to pay the large liability incurred on their joint account to said Henderson Brothers & Co. It will require about the amount of the cotton-seed levied on for planting, and the balance thereof, with the guano, is needed for fertilizing, as the lands upon which said crops are to be grown are, to some extent, sterile; and complainant avers, that in the event said property is sold under said execution, or the interest of the said John A. Daniel therein, it will work a great hardship and oppression to this complainant, and will interfere very seriously with their farming operations the present year, unless more can be procured elsewhere,—of which complainant is unapprised. Complainant further showeth, that the sheriff was proceeding to sell all of said cotton-seed, and all of said guano, so levied on, to satisfy said execution against said John A. Daniel, until he was prevented from so doing by a claim-bond and affidavit, interposed by said Henderson Brothers & Co., under the mistaken belief, as complainant is informed and believes, that they had the right to claim said property, because they had advanced the same to complainant and said John A. Daniel to enable them to make a crop; but no proceedings have been had for the trial of the right of property, other than the filing of the affidavit, as above stated, and the giving of a bond by said Henderson Brothers & Co. Complainant further showeth, that there is nothing belonging to said partnership, except such articles as have been advanced to them by said Henderson Brothers & Co., all of which is unpaid for; and complainant and said John A. Daniel are depending altogether upon the crop to be made the ensuing year, for the means to

[Daniel v. Owens & Co.]

discharge their said joint liability, and for the profits which they hope to realize therefrom; that all the property owned by them is not sufficient to discharge their said joint liability to said Henderson Brothers & Co., and that said John A. Daniel is insolvent."

The prayer of the bill was for an injunction, "perpetually restraining the said Owens & Co. from further attempts to sell said property so levied on under said execution, or to otherwise prosecute said claim-suit; or, if this is not the appropriate prayer, then he prays that they be enjoined from selling his interest therein; and if this honorable court should decide that the interest of said John A. Daniel in said property is liable on said execution, then he prays for a sale of all the partnership and joint property of complainant and said John A. Daniel, to pay first their joint liabilities, as before stated, and apply the residue only of the said John A. Daniel's interest therein to the payment of his said individual debt; or, if complainant has not asked the appropriate relief, then he prays for such other, further, and general relief, as, the premises considered, he may be entitled to."

A demurrer to the bill was filed by Owens & Co., for want of equity, "because it fails to allege that the sheriff or Owens & Co. were about to take exclusive possession of the property levied on; and because it asks repugnant and inconsistent relief; and because the complainant has an adequate remedy at law." They also filed an answer, which it is unnecessary to notice. The cause being submitted on the demurrer, and at the same time on the pleadings and proof, the chancellor rendered a decree dismissing the bill, but without assigning any reasons for his decision; and his decree is now assigned as error.

JOHN D. GARDNER, for the appellant, contended that the bill showed a case for equitable interposition to prevent irreparable injury; citing, to this point, *Moore & Co. v. Sample*, 3 Ala. 319.

GRIFFIN & WOOD, contra, cited *Winston v. Ewing*, 1 Ala. 129; *Andrews v. Keith*, 34 Ala. 722; *Wilson v. Strobach*, 59 Ala. 483; *Moody v. Payne*, 2 John. Ch. 548; High on Injunctions, § 814.

STONE, J.—Certain principles affecting this case have been so often asserted, both in this and other States, that, in the absence of legislation, we do not feel at liberty to disturb them. Among the principles so settled are the following:

*First:* That under a *fieri facias* against the goods of one

member of a partnership, his interest in the tangible effects may be levied on and sold, and only his interest.

*Second:* The right acquired by such purchase, is the right of the partner whose interest was sold, and only his rights, subject to all the liens, incumbrances and disabilities, which rested upon it when owned by the execution debtor, as a member of the partnership. "It is not a separate and exclusive right to any part or portion of it; or any right of any kind to any one part, rather than to any other part; or any other right or interest than that which all the other partners have. It must be remembered, not only that the ownership of each partner is subject to the ownership of all the others, but that all the partners together hold the property subject to the right of the partnership as a body, *per se,* to apply all its funds to the payment of all its debts. The real ownership of all the chattels is vested in the firm; the interest of each partner is merely a right to share in the proceeds of those chattels, after all the partnership obligations have been satisfied. No one partner has a separate ownership of, or right to possess exclusively, any part or parcel of the partnership assets, and a successor to his interest by purchase at execution sale, can acquire no greater interest than he had."— *Winston v. Ewing,* 1 Ala. 129; *Moore v. Sample,* 3 Ala. 314; *Andrews v. Keith,* 34 Ala. 722; *Warren v. Taylor,* 60 Ala. 218; *Atwood v. Meredith,* 37 Miss. 635; Parsons on Partnership, 350; Story on Part. § 261; Fox's Dig. Partnership, 122; Freeman on Executions, § 125; 1 Story Eq. Jur. § 677; *Clagett v. Kilbourne,* 1 Black, U. S. 346; *Sutcliffe v. Dohrman,* 18 Ohio, 181; *Sitler v. Walker,* Freem. Ch. 77; *Clark v. Allee,* 3 Harring. 80.

Another principle has legitimately grown out of those stated above. The execution creditor having a right to levy on and sell the partner's individual interest, and the execution purchaser stepping only into the shoes of him whose right was sold, without changing or affecting the rights of the other partner or partners, if there was nothing more in the transaction, the latter would have no right in equity to arrest such levy and sale. *Moody v. Payne,* 2 Johns. Ch. 548; High on Injunctions, § 814. In fact, we know not how to reconcile the two propositions, that an execution at law may be rightfully levied on the individual interest of a partner, and yet chancery will arrest the sale until the partnership account is first taken.

We will not say cases may not arise, where the nature of the partnership transactions is such, that a levy, seizure and sale of the interest of one partner, will so disturb and embarrass the business of the firm, as to inflict on the other member or members irreparable injury, and thus clothe the Court of Chancery with jurisdiction to arrest such interference, until, by account,

the interest of such execution debtor can be ascertained, and brought to sale without detriment to the other partners. We merely raise this inquiry, for the purpose of saying it is not decided. If such jurisdiction exists, it can only be called into exercise by clear and strong averments, showing the injury that must result from a disturbance of the possession consequent upon the levy.—Story on Partnership, 7th ed., § 264, and notes; *Moore v. Sample, supra.* See, also, *Gibson v. Stevens*, 7 N. H. 352; *Garvin v. Paul*, 47 N. H. 158.

The bill in the present case utterly fails to show any interference, actual or threatened, with the possession of the partnership, or any member thereof, under the levy sought to be enjoined. It therefore fails to show any special ground for equitable interposition—fails to show irreparable injury will follow from a sale—and the chancellor rightly dismissed it for want of equity.

If the sheriff, under an execution against one member of a firm, should levy upon and sell the interest of the other member, this would be a conversion, for which the latter could maintain an action of trover.—*Perminter v. Kelly*, 18 Ala. 716; *Walsh v. Adams*, 3 Denio, 125; Freeman on Executions, § 254. It may be such excessive levy would constitute the sheriff a trespasser *ab initio*, for which an action would lie in the name of the firm.—*Sheppard v. Shelton*, 34 Ala. 652.

Another question may become very important in the after consequences of this decision. According to the averments of the bill, the sheriff levied the execution on only a part of the partnership effects, which consisted of a larger quantity. Was this permissible? Under the older rulings, which regarded the ownership of the several partners as partaking of the nature of co-tenancies, such levy on a part of the partnership effects might be upheld. But the scope of partnership associations has become greatly enlarged in modern times, and their nature and principles have come to be better understood. Those principles are shown above, as extracted from the highest authorities, and they are very unlike those which obtain between tenants in common. Freeman, in his work on Executions, § 125, very justly says: "The precedents made at an early day, when the law of partnerships was imperfectly understood, are losing their force as authorities. Their place is being supplied by a line of decisions, destined to grow in favor and number, declaring that the creditor of an individual partner can not sell any specific article, but only the partner's interest in the whole of the partnership assets, and that the purchaser does not acquire the right to hold possession of the property purchased, as against the other members of the firm." These, we think, are words wisely and fitly spoken, and they have our approval and

[Dowling v. Blackman.]

indorsement, as the necessary result of the character of title owned by the several partners. They are supported by the following authorities: *Sirrine v. Briggs*, 31 Mich. 444; *Whigham's Appeal*, 63 Penn. St. 194; *Vandike v. Rosskam*, 67 Penn. St. 330; *Deale v. Bogue*, 20 *Ib.* 228; *Reinheimer v. Hemingway*, 35 *Ib.* 432; *Thomas v. Lusk*, 13 La. An. 277; *Pittman v. Robicheau*, 14 *Ib.* 108. See, also, Story's Eq. Jur. § 678.

The decree of the chancellor is affirmed.