# Farley, Spear & Co. *v.* Moog.

*Bill in Equity by Partnership Creditors, against Surviving Partner and Individual Attaching Creditors.*

1. *Rights of surviving partner, in and to partnership property.*—On the dissolution of a partnership by the death of one of its two members, the surviving partner is entitled to the exclusive possession of the partnership property; but he holds the assets as a *quasi* trustee, first for the partnership creditors, and afterwards for the personal representative of the deceased partner; and while the courts will not interfere with his management, so long as he continues faithful to his trust, a court of equity will often intervene to afford relief against waste, negligence, misconduct, or other violation of duty on his part, prejudicial to the rights of the party complaining.

2. *Execution or attachment against individual partner, levied on partnership property.*—When an execution or attachment against an individual partner is levied on the partnership property, the purchaser at a sale under the levy acquires only that partner's interest in the assets which may remain after the partnership debts have been paid and the partnership affairs adjusted; and this can only be ascertained by an account in equity.

3. *Rights of partnership creditors, on dissolution of partnership, insolvency and misconduct of surviving partner.*—Strictly speaking, partnership creditors have no lien upon the partnership assets for the payment of their debts, though they are entitled to priority of payment over individual creditors; yet, where the surviving partner becomes insolvent, and his individual creditors levy attachments on the partnership property, the partnership creditors may come into equity to enforce their right to priority of payment out of the partnership assets.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 21st January, 1885, by Farley, Spear & Co., a partnership doing business as bankers in the city of Montgomery, and claiming to be creditors of the late firm of A. & B. Moog, a mercantile partnership doing business as wholesale grocers and liquor-dealers in the city of

[Farley, Spear & Co. v. Moog.]

Mobile; against Bernard Moog, the surviving partner of said firm, the sheriff of Mobile county, Marcus Lyons and others, creditors of said Bernard Moog individually, who had sued out attachments against him, which had been levied on the stock of goods in his possession. According to the allegations of the bill, the firm of A. & B. Moog was dissolved, by the death of A. Moog, in March, 1884, being then indebted to the complainants, balance on accounting, in the sum of $1,800, or more. On the 10th April, 1884, complainants brought suit in the Circuit Court of Mobile, against said B. Moog as surviving partner, and recovered a judgment against him, on the 17th January, 1885, for $1,940.84. A copy of this judgment was made an exhibit to the bill; and it was alleged that, on the same day it was rendered, on special motion to the court, an execution was ordered and issued, and was still in the hands of the sheriff when the bill was filed. It was further alleged that, after the death of said A. Moog, the surviving partner, "instead of winding up said partnership business as the law directs, and keeping the assets of said late firm intact, as he should have done, for the benefit of the firm creditors, has continued to do business with said assets in his own name, claiming, dealing and trading with said assets, in the store of said late firm, as if said stock was his individual property ;" that he made daily sales, and replenished the stock, from time to time, with the proceeds of sale, but the principal part of the stock in trade remained substantially the same; that he had no individual means with which to make purchases, and used the assets and moneys of the firm for that purpose, mingling his new purchases with the stock on hand. The several attachments were sued out on the 12th, 13th, and 14th January, 1885, and were levied on the stock of goods in the store; and it was alleged that the sheriff, acting under orders of the Circuit Court to which the several attachments were returnable, had sold a part of the goods levied on, and had advertised the residue for sale. An amendment of the bill was afterwards allowed, which alleged that said Bernard Moog was insolvent, and that the firm of A. & B. Moog was insolvent at the time of its dissolution by the death of said A. Moog.

The prayer of the bill was expressed in these words : " Orators pray that this hon. court will take jurisdiction of the whole trust arising out of the dissolution of said late firm of A. & B. Moog, and will require said Bernard Moog, as surviving partner, to accounts for all assets of said firm which came to his hands as such surviving partner ; and will charge him with all profits, if any, that have been made by him out of the assets of said firm ; and will decree payment of the said judgment in favor of your orators ; and will then order such a statement of

the partnership accounts as will show what interest said Bernard Moog individually possesses in the same; and will decree, out of the individual interest of said Bernard Moog in the same, payment of the several individual debts of said Bernard which have been secured by the several attachments hereinabove described, according to their legal priority; that a receiver may be appointed for the preservation of said trust fund pending this suit, to take possession of all the assets of said late firm of A. & B. Moog, including the stock of merchandise now in hands of the sheriff of Mobile county ; that said sheriff be restrained by injunction from making any sales of said stock whatever, until the further order of this hon. court; and for such other and further relief as to the court may seem meet and proper."

Demurrers to the bill were filed by the several attaching creditors who were made defendants, and by the sheriff, the causes of demurrer specifically assigned being, in substance, as follows: 1st, that the complainants showed no interest or title in or to the attached property, nor any lien upon it, which could in any manner supersede or override the lien of the several attachments ; 2d, that complainants had a complete and adequate remedy at law ; 3d, that the sheriff was improperly joined as a defendant; 4th, that no reason was shown for interfering with his possession by the appointment of a receiver. The chancellor sustained the demurrers, and his decree is now assigned as error.

TROY, TOMPKINS & LONDON, and HANNIS TAYLOR, for appellants.—The bill seeks to enforce an equitable lien in favor of partnership creditors, upon partnership assets in the hands of an insolvent surviving partner, upon which attachments against him individually have been levied. It is admitted that partnership creditors, as such, have no lien upon the partnership assets for the payment of their debts; but the several cases in which this principle is asserted, further declare that, under certain circumstances, a lien in their favor may be worked out through the surviving partner, who is a trustee for their benefit, and to those rights they may be subrogated; and the equity of the bill rests on this well-settled doctrine.—*Hart v. Clark*, 54 Ala. 494 ; *Warren v. Taylor*, 60 Ala. 223 ; *Reese v. Bradford*, 13 Ala. 846 ; *Donelson v. Posey*, 13 Ala. 268 ; *Evans v. Winston*, 74 Ala. 351 ; Story's Part. §§ 509–10 ; *Andrews v. Brown*, 21 Ala. 437 ; *Strange v. Graham*, 56 Ala. 614 ; High on Receivers, § 532. The complainants have reduced their debt to judgment against the surviving partner, and their execution is a lien on the partnership assets in his hands ; and the prior levy of the defendants' several attach-

[Farley, Spear & Co. v. Moog.]

ments can give them no right to priority of payment. A purchaser at a sale under execution against an individual partner, or under attachment against him, acquires only a right to án account in equity, and to receive the surplus which may remain after the partnership debts have been satisfied.—*Andrews v. Keith*, 34 Ala. 722 ; *Taylor v. Fields*, 1 Vesey, 396 ; *Ex parte Ruffin*, 6 Vesey, 119 ; Parsons' Part. 351. The insolvency of the dissolved partnership and of the surviving partner gives additional equity to the bill, requiring the assets to be marshalled, and the sale under attachment to be enjoined.—*Moore v. Sample*, 3 Ala. 319 ; *Coffin v. McCullough*, 30 Ala. 107 ; *Emanuel v. Bird*, 19 Ala. 596 ; *Smith v. Mallory*, 24 Ala. 628 ; *Case v. Beauregard*, 99 U. S. 119, 101 U. S. 689 ; *Daniel v. Owens*, 70 Ala. 297.

G. B. CLARK & F. B. CLARK, PILLANS, TORREY & HANAW, and DESHON & LAY, for the several appellees, submitted separate briefs, in which they made the following points : (1.) Partnership creditors have no equitable lien on partnership assets for the payment of their debts.—Story on Partnership, 509–10 ; *Reese v. Bradford*, 13 Ala. 837 ; *McGowan v. Sprague*, 23 Ala. 529 ; *Clark v. Mayer*, 40 Ala. 270 ; 55 Miss. 597. (2.) The complainants have no standing in court as judgment creditors of the dissolved partnership, because of their judgment against the surviving partner.—*Reese v. Bradford*, 13 Ala. 864 ; *Boykin v. Cook*, 61 Ala. 472. (3.) No right of subrogation, however, can be worked out through the surviving partner, who, on the allegations of the bill, could not ask the aid of a court of equity to set aside his own wrong, and compel him to pay his debts out of property in his own hands. (4.) A creditor of an individual partner may levy his execution or attachment on partnership property, and a court of equity will not enjoin the sale, except under special circumstances.—*Moore v. Sample*, 3 Ala. 319 ; *Moody v. Payne*, 2 John. Ch. 548 ; *Daniel v. Owens*, 70 Ala. 297. (5.) No injunction is prayed against the attaching creditors, but the effort is made to restrain the sheriff, the mere ministerial and executive officer of the court of law, from selling the property under the orders of that court. This can not be done, and the sheriff was improperly joined as a defendant.—2 Story's Equity, §§ 875–87 ; 1 High on Injunctions, §§ 45–6 ; *Freeman v. Howe*, 24 Ala. 450 ; *Buck v. Colbath*, 3 Wall. 340 ; 14 Otto, 228 ; 6 Ired. Eq. 199 ; 1 Barb. Ch. 273 ; 2 Heisk. 423 ; 1 Tenn. Ch. 124 ; *McNeill v. McNeill*, 36 Ala. 109 ; *Shrader v. Walker*, 8 Ala. 244. (6.) If any part of the stock of goods on hand belonged to the dissolved partnership, it was subject to the complainants' execution at law ; but, as to new goods

purchased by the surviving partner, and mingled with the old stock, they can neither reach them by execution, nor enforce a trust in them.—*Case v. Beauregard*, 99 U. S. 119; 3 Sneed, 462; 4 Humph. 233; 22 Penn. St. 16; 30 Ala. 164; 40 Ala. 518.

SOMERVILLE, J.—Upon the dissolution of a partnership, the assets of the firm pass to the surviving partner, the legal title and possession becoming vested in him. For many purposes he is, at law, the legal owner of such property, with power to sell or transfer it *ad libitum*. But, in equity, he occupies the relation of *quasi* trustee, towards both the personal representative of the deceased partner and the creditors of the partnership. It is said by Mr. Parsons, that "surviving partners are held strictly as trustees, and their conduct in discharging their trust is carefully looked after by courts of equity."—Parsons on Partnership, 442; *Davis v. Sowell & Co.*, 77 Ala. 262. Other authorities regard them as trustees in a more modified sense. This trust originates from the duty imposed on them by law, which is to appropriate the partnership property to the payment of the partnership debts, and to wind up the business of the concern with due diligence and good faith. His powers are accordingly commensurate with this duty, and, so long as he continues faithful to his trust, his exclusive right of possession and management will not be interfered with by the court, but will be protected. But, if he be unfaithful to his trust, or be guilty of any negligence, waste, misconduct, mismanagement, or other wrong, prejudicial to the right of any party interested, a court of equity will often intervene to afford relief. The circumstances under which this will be done can not be stated with greater certainty by any general rule, which is applicable to all cases.—Parsons on Partnership (3d Ed.), *440, *446; 3 Kent's Com. (12th Ed.) *64; *Case v. Aberly*, 1 Paige, 398.

In this State, the principle prevails, in accordance with the general weight of authority, that, where the interest of one partner in partnership property is levied on and sold under attachment or execution, based on the individual debt of such partner, the sale can be made only subject to the equitable lien of the firm debts and liabilities; and the purchaser acquires nothing more than what remains of the individual partner's interest, after a settlement of the partnership affairs, and the payment of the debts of the concern out of its assets thus subjected to sale. In other words, the effects of a partnership can not be taken by attachment or execution to satisfy a creditor of one of the partners, except to the extent of his interest in the effects after settlement of the partnership debts. He thus pur-

chases a mere right in equity to call for an account, and thus to entitle himself to the interest of the partner in the property which may be ascertained to exist upon a settlement—which may be something or nothing.— *Warren v. Taylor*, 60 Ala. 218; *Andrews v. Keith*, 34 Ala. 722; *Daniels v. Owens*, 70 Ala. 297; Parsons on Partnership (3d Ed.), *350, *351; Collyer on Part. (Wood's Ed. 6th), 187, *note;* 2 Story's Equity Jur. § 677.

The creditors of a partnership, as such, can not be said, ordinarily, to have any lien upon the partnership assets for the payment of their claims against the firm. Such a lien or equity, strictly speaking, exists only in favor of the partners themselves, or their personal representatives; and they alone can assert it, as a general rule. Yet there are circumstances, under which, according to the better view, a court of equity will aid partnership creditors in asserting a priority of payment out of partnership property, in preference to individual creditors, even though the latter may have acquired a lien by attachment, or otherwise, as in this case, on the interest of one of the partners. This right of creditors to a *quasi* lien, when it exists, it is true, can be worked out only through the partners themselves, being derivative, and in the nature of a right by subrogation. It is commonly held, for this reason, to be lost, whenever the partners themselves part with their interests in the partnership effects, by making a *bona fide* sale of them for a valuable consideration, or, as is sometimes said, " a sale *bona fide* and upon a full and fair consideration."—*Mayer v. Clark*, 40 Ala. 259; Story on Partnership (7th Ed.) § 360, *note* 3.

The creditors may, in our opinion, avail themselves of this *quasi* lien, in cases where there has been a dissolution of the firm by death of one of its members, and the insolvency of the surviving partner has supervened. We need not carry the principle farther than this at present, as the necessities of the case do not require it, although the authorities, perhaps, go even further. Mr. Story argues it to exist in cases where there is a dissolution by either the death or bankruptcy of one partner. " In case of a dissolution," he says, " each partner holds the joint property, clothed with a trust to apply it to the payment of the joint debts, and subject thereto to be distributed among the partners according to their respective shares therein;" and he adds, that " it is only in cases where there is a dissolution by the death or bankruptcy of one partner, that the right of the joint creditors can attach, as a *quasi* lien, upon the partnership effects, as a derivative subordinate right, under and through the lien and equity of the partners."—Story on Partnership (7th Ed.), §§ 360, 361. In *Pearson v. Keedy* (6 B. Monroe, 128; s. c., 43 Amer. Dec. 160), it is said: " The cred-

itor of the firm has no such lien in himself, but only a derivative equity based upon the rights of the partners themselves, in virtue of which he may, in case of the death of one of the partners, and the insolvency of the survivor, be *substituted* to the rights of the deceased, or his represenatives, to have the partnership effects appropriated to the partnership debts. But this right of substitution is based on necessity arising from the insolvency of the survivor, and the consequent insufficiency of the legal remedy." Mr. Parsons also recognizes the existence of such an equity upon the supervening dissolution and insolvency of a partnership, and asserts that, while it may not be created by this *status* of the firm, it is brought into prominence, and the courts of equity often recognize and enforce such a preference. "If the private creditor," he observes, "levies on the joint property, and, on an account being taken to find the amount covered by the levy—viz., the debtor's share—if it appear that there is enough to satisfy both the joint and separate creditors, the former can not be said to be preferred. If there is not enough to satisfy both, then there is an insolvency, and the joint creditors are preferred. So, in the case of marshalling assets." . "This, therefore," he adds, "seems to be the sense in which the numerous cases are to be taken which admit the equitable lien only in case of insolvency."—Parsons on Part. (3d Ed.), 375, 378 (*346, *349), and note (g) on page 375. The doctrine, that firm assets must first be applied to the payment of the firm debts, has been said to be "a principle of administration," adopted by the courts where they are called on to intervene in winding up the partnership business ; and it is applied where no valid charge upon, or disposition of the assets, has been created or made by the firm.—*Schidlapp v. Currie* (55 Miss. 597); s. c., 30 Amer. Rep. 530. It can not, therefore, be said to rise to the dignity of a strict lien, in the full sense of the word. It is an equity of preference or privity closely approximating a lien, based upon obvious principles of justice ; and is a fit correlative of the other principle, now settled in this and some other States, that, in cases of insolvency, the separate creditors have a primary claim upon the separate property of the partners, and that partnership creditors are not entitled to share with them, *pari passu*, in the estate of a deceased partner, when insufficient to pay separate debts, and the surviving partner has a joint fund in his hands.—*Smith v. Mallory*, 24 Ala. 628 ; Story on Partnership, § 363. The justice of the rule is commonly said to consist in the fact, that the joint and several debts were each incurred upon the faith of the joint and several funds respectively.

In view of these principles, we are of opinion that the com-

[Farley, Spear & Co. v. Moog.]

plainants' bill had equity in it, and should not have been dismissed. The attachment levied on the property by the individual creditors might, at law, it is true, reach the entire assets in the hands of the surviving partner, the legal title of which has vested in him. In equity, it reached only his interest in the firm property after the payment of the firm debts; and no remedy existed to ascertain this, and afford protection to complainants' rights, except in a court of equity. The surviving partner, being a trustee of these assets, was liable to account for them; and he being insolvent, an equity would be enforced in favor of partnership creditors, by which they would have priority of payment out of the partnership assets, no valid alienation having been previously made of such property, and no valid incumbrance having been created on it at the time of the filing of the bill. Equity will assume jurisdiction, not only upon the idea of a trusteeship in the surviving partner, and of his alleged misconduct in the mismanagement of the partnership effects, but of the existence of a *quasi* lien in the partnership creditors, brought into existence by the dissolution of the partnership, and the insolvency of the surviving partner; to which may be added the complication likely to arise from a sale under the attachment proceedings, and the inadequacy of a court of law to ascertain the interest of the surviving partner in the partnership effects, and afford protection to its creditors. *Hubbard v. Curtis*, 8 Iowa, 1; *Washburn v. Bank*, 19 Vt. 278; Parsons on Partnership (3d Ed.) 282-283; *Freeman v. Stewart*, 41 Miss. 138; *Menagh v. Whitwell*, 52 N. Y. 146; s. c., 11 Amer. Rep. 683; *Bank v. Wilkins*, 9 Me. 28; *Skidmore v. Collier*, 15 N. Y. 50; *Blackwell v. Rankin*, 7 N. J. 152; *Pearson v. Keedy*, 43 Amer. Dec. 160; *Tenny v. Johnson*, 43 N. H. 144; *Tillinghast v. Champlain*, 4 R. I. 173.

We cite the foregoing authorities without intending to indorse some of them, which carry the doctrine of a creditor's lien further than sound principle would probably justify.

The complainants would be entitled to reach only such assets as originally belonged to the firm, or such as were purchased with trust money belonging to the firm, which may have come into the hands of the surviving partner, as the proceeds of sale of the partnership goods or otherwise. We do not construe its purpose to extend further.

The demurrer was improperly sustained to the bill; and the decree of the chancellor must be reversed, and the cause remanded.