# Steiner v. Peters Store Co.

*Bill in Equity to Determine Priority of Judgment and Attachment Liens.*

1. *Partner's interest in partnership liable to execution.*—A separate creditor of any one partner may take in execution that part-ner's interest in the partnership property; but such interest is only in the surplus remaining after the payment of all the partnership liabilities, and the adjustment of the accounts between the partners themselves, and the property, after the execution sale, still remains liable for the partnership debts.

2. *Partnership property not subject to lien of registered judgment of separate creditor of one partner.*—The real ownership of partnership property is in the firm; the property itself is not subject to the lien of an execution of a separate creditor of one partner, nor is the lien of a registered judgment of such creditor a lien upon that partner's moiety of tangible part-nership property, but only upon his ultimate interest; and such judgment lien will not displace the lien of a subsequent attaching creditor of the partnership, or the right of the partnership creditors to be first paid.

3. *Partnership creditors, no lien upon partnership property.*—Part-nership creditors, as such, have no lien upon, or independent right to priority of payment out of partnership property; such a lien exists only in favor of the partners themselves, to relieve them and their property from the burden of partner-ship debts; the equity of the partnership creditors is a de-rivative one,—an equity in the nature of subrogation to the right of the partners,—and can be made effective only through them.

4. *Waiver of partner's lien, destroys right of partnership creditor to priority.*—If the partners have surrendered or waived the right to demand the application of the firm assets to the pay-ment of firm debts, or for any reason are not in condition to assert the right, it is lost to the partnership creditors.

5. *Partners lien lost by voluntary act, or by operation of law.*—The lien of partners may be lost in various ways, and either by

voluntary surrender thereof or by operation of law.

6. *Lost by voluntary act, examples.*—If upon the dissolution of a partnership, the partners in good faith agree that the joint property shall belong to one of them individually, or if a surviving partner turns over to the personal representative of the deceased a part of the partnership assets, or if each of the partners transfers his interests in the partnership property to the same person, in either case the partner's lien to such property is extinguished, and with it the right of partnership creditors to priority of payment out of the partnership property over the separate creditors of the partners.

7. *Lost by operation of law, example.*—The sale of a partner's interest under execution has the same effect upon that partner's lien, as a voluntary transfer by himself, and therefore, if the interest of each partner is sold under a single execution, issued upon a joint judgment against each partner, neither of the partners is in a position to enforce the lien, and the right of firm creditors to subrogation thereto must necessarily be lost.

8. *Registration of a joint judgment against partners for joint personal debt, gives priority over subsequent partnership creditors.*—The registration of a joint judgment against each of the several members of a partnership, for a joint obligation, whether or not the obligation was that of the firm, creates a lien upon the partnership property superior to the rights of any firm creditor subsequently acquired, and execution on such judgment may be levied on the *corpus* of the partnership property, and a sale thereunder vests the entire property in the purchaser, wholly free from the claims of partnership creditors.

APPEAL from Escambia Chancery Court.

Tried before Hon. JERE N. WILLIAMS.

This cause was submitted in the court below on an agreed statement of facts, which are fully shown in the opinion. It was agreed that the pleadings be amended so as to present the one question mentioned in the opinion. The record contains merely the agreed statement of facts, and the decree of the chancellor adjudging that Stern & Kraus are not entitled to the relief prayed for against Christian Craft Grocery Co., ordering the funds paid over to the latter, and dismissing the bill. This decree is assigned as error.

GRAHAM & STEINER, for appellants, cited, *Steiner v. Parker,* 19 So. 386; 2 Bates, Partnership, 576, 824; Free-

[Steiner v. Peters Store Co.]

man on Judgments, 338, 339; *Decatur C. C. Works v. Moses,* 89 Ala. 538.

M. A. RABB, *contra,* cited, *Farley v. Moog,* 79 Ala. 148; *Daniels v. Owens,* 70 Ala. 297; *Andrews v. Keith,* 34 Ala. 722.

BRICKELL, C. J.—Previously to April 9, 1885, C. D. Henderson and S. E. Henderson were engaged in the mercantile business, as partners, under firm name of Henderson Bros., and while thus doing business the firm became indebted to Stern & Kraus, who on April 9, 1885, obtained a judgment on their claim for the sum of $419.04, and on March 26, 1891, a certificate of said judgment was duly recorded in the probate office, as authorized by statute. Previously to the rendition of the judgment, the firm of Henderson Bros. became insolvent, and was dissolved, and the individual members thereof had no further connection with each other as partners until the year 1892, when they, together with one Jellison, formed a partnership, and engaged in the mercantile business, under the name of Peters Store Company. Afterwards the Hendersons bought out Jellison's interest, and continued the business as partners, under the same name. Subsequently the Peters Store Company, then composed of the two Hendersons, became indebted to the Christian Craft Grocery Company, in the sum of $3,261.84. On this debt the Christian Craft Grocery Company sued out an attachment, on November 1, 1894, against the Peters Store Company, and the writ was levied on a stock of goods belonging to said firm, and an order of court for the sale of goods was obtained. A few days after the levy Stern & Kraus had an execution issued on their recorded judgment, and placed in the hands of the sheriff, who sold the goods, under said order of court and execution, the proceeds of the sale amounting to $750. The sole question presented by this appeal, under the agreement of counsel, is whether the judgment of Stern & Kraus was a lien on said stock of goods superior to that of the attachment of the Christian Craft Grocery Company, so as to entitle the former to priority of payment out of the proceeds of said sale.

It does not clearly appear from the record whether the judgment was against the firm of Henderson Bros.,

or against the individual members thereof; but counsel for both parties, in their argument, treat it as judgment against the individual members, and we so consider it. The act of February 28, 1887, gives to a recorded judgment the effect of a lien upon all the property of the defendant, in the county in which the judgment is recorded, which is subject to levy and sale under execution, and the lien continues for the period of ten years from the date of registration.—Code, 1896, §1921. Unless, therefore, the tangible property of the Peters Store Company, as distinguished from the individual partners' interest therein, was subject to levy and sale under an execution issued in proper time on the judgment, the lien of the judgment did not attach to the property itself, and the lien of the attachment must prevail. If, on the other hand, the tangible property of said firm was subject to levy and sale under an execution issued on said judgment, the lien of the recorded judgment attached to the property, and was superior to the rights of creditors of said firm subsequently acquired. It is well settled in this state that a separate creditor of any one partner may take in execution that partner's interest in the partnership property. This interest, however, is only an interest in the surplus remaining after the payment of all the partnership liabilities, and the adjustment of the accounts between the partners themselves, and the property, after the execution sale, still remains liable for the partnership debts.—*Andrews v. Keith,* 34 Ala. 722; *Daniel v. Owens,* 70 Ala. 300; *Farley v. Moog,* 79 Ala. 148; *Wilson v. Strobach,* 59 Ala. 492. The property itself is not subject to such execution, and hence the lien of a recorded judgment of a separate creditor of one of the partners is not a lien upon that partner's moiety of the tangible partnership property, but is a lien upon his ultimate interest, and will not displace the lien of a partnership creditor acquired by the levy of an attachment on firm property, or the right of such creditor to payment out of the partnership property in preference to such judgment creditor. The real ownership of all the property of the firm is vested in the partnership. The interest of each partner which is subject to sale under execution is merely the right to share in the proceeds of the property after all the partnership obligations have been satisfied, and

a successor to his interest by purchase at execution sale can acquire no greater interest than this.—*Daniel v. Owens, supra.* But the rights of the partners, and, of consequence, the rights of partnership creditors, are changed, and the effect of a sale of partnership property under execution is different, when the execution under which the sale is made is upon a judgment against each of the individual members of the firm, and not upon a judgment against one only, or any number less than the whole. The reason for the foregoing principles is not founded upon any independent right of the partnership creditors to a right of priority of payment out of partnership property, but upon the right of each partner, growing out of the trust relation created by the nature of the partnership agreement, to insist upon the application of the firm assets to the payment of the firm debts and the adjustment of any balance that may be due himself. The partnership creditors, as such, have no lien upon the partnership assets for the payment of their claims. Such a lien exists only in favor of the partners themselves. It is solely for their benefit and protection, to relieve them and their property from the burden of the partnership debts. The equity of the partnership creditors is a derivative one,—an equity in the nature of a subrogation to the right of the partners,—and can be made effective only through them.—*Goldsmith v. Eichold,* 94 Ala. 116; *Farley v. Moog,* 79 Ala. 148. Hence, if the partners have surrendered or waived the right to demand the application of the firm assets to the payment of firm debts, or for any reason are not in condition to assert the right, it is lost to the partnership creditors. In *Goldsmith v. Eichold, supra,* it was said "The preferred payment being the result of the co-partners' lien, and not of the creditors', it follows that, if the partner has done any act by which he surrenders his lien, or estops himself from asserting it, the creditor is equally barred or estopped. His *quasi* lien being, at best, only the resultant of his debtor's lien, of course it cannot exist after the debtor has ceased to have any lien from which it could result. This is axiomatic." This lien of the partners may be lost in various ways, and either by voluntary surrender thereof or by operation of law. Thus, if upon the dissolution of the partnership, the partners agree that the joint property shall belong to

one of them individually, such contract, if made in good faith, transfers the entire interest in the property, and the partnership creditors can no longer claim priority of payment over the separate creditors out of such property, since each partner, by his voluntary act, has waived his right to have the partnership assets so applied.—*Mayer v. Clark,* 40 Ala. 270; *Reese v. Bradford,* 13 Ala. 837. So, if the surviving partner turns over a part of the partnership assets to the personal representative of the deceased partner, the former's lien is thereby extinguished, and there is, therefore, none to which the partnership creditors can be subrogated.—*Rose v. Gunn,* 79 Ala. 415. And if each of the partners transfers his interest in the partnership property to the same person, the joint creditors are, for the reason, deprived of any right of priority over the separate creditors in the payment of their claims out of firm property. *Kimball v. Thompson,* 13 Meto. (Mass.) 283. The sale of a partner's interest under execution has the same effect upon that partner's lien as a voluntary transfer by himself, and therefore if the interest of each partner is sold under a single execution, issued upon a joint judgment against each partner, neither of the partners is in a condition to enforce the lien, and the right of firm creditors to subrogation thereto must necessarily be lost. In *Sanders v. Reilly,* 105 N. Y. 12, 12 N. E. 170, it was contended, as here, that a sale of firm property under an execution issued on a judgment against all the partners individually, for a joint obligation,—not a firm obligation,—operated as a sale only of the separate interests of the members, and not as a sale of the corpus of the firm property. But it was held that, while firm property will not pass under successive sales under separate executions, issued against each of the individual partners, the property will pass under a sale upon a joint execution against all the partners, issued upon a judgment recovered for any joint debt whatever. In *Couchman's Adm'r v. Maupin,* 78 Ky. 33, a creditor of the partners as individuals, and not as a firm, having obtained judgment against all the individual members, placed a single execution against all in the hands of the officer, and thereby obtained a lien from such time against the property of each, under the laws of the state. Subsequently, and before actual levy, the partners

transferred all the assets to a trustee for the benefit of the firm creditors. It was held that the judgment was a lien upon the partnership property, and the trustee took the property subject to the lien, upon the theory that, by operation of law, each partner's right to insist upon the payment of the firm debts out of the firm property was lost by reason of the lien of the judgment against each. And in Coover's Appeal, 29 Pa. St. 9, it was said that sales under execution against each of the partners have the same effect as sales by the individual partners themselves; see, also, *Doner v. Stauffer*, 1 Pen. & W. 198; Bates, Part., §§189, 190. It results from the application of these principles that a single execution, issued upon a joint judgment against each of the several members of a partnership, for a joint obligation, whether or not the obligation was that of the firm, may be levied upon the corpus of the partnership property, and a sale under such execution vests in the purchaser the entire property, wholly free from the claims of the partnership creditors. Hence, the registration of such judgment is a lien upon the partnership property superior to the rights of any firm creditor subsequently acquired. The judgment of Stern & Kraus was a joint judgment against each of the partners composing the firm of the Peters Store Company, the registration of which effected a lien upon the partnership property in the county in which the judgment was recorded, which was superior to that of the Christian Craft Grocery Company, acquired by the levy of the attachment. The court erred, therefore, in its decree declaring the lien of the attachment superior to that of the judgment, and the decree must be reversed, and the cause remanded for proceedings in conformity to this opinion.